928 F.2d 824
 Nui Loa PRICE, Dr., aka Maui Loa, individually and in his
capacity as chief of Hou Hawaiians; The Hou Hawaiians, a
native Hawaiian Ohana; Kamuela Price, individually and in
his capacity as member of elder council of the Hou
Hawaiians, Plaintiffs-Appellants,
v.
Moanikeala AKAKA; Rod Burgess; Clarence Ching; Frenchy
Desoto; Louis Hao et al., Defendants-Appellees.
 No. 89-15169.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted May 16, 1990.
Decided Sept. 25, 1990.
As Amended on Denial of
Rehearing and Rehearing En Banc
March 21, 1991.
 
 Walter R. Schoettle, Honolulu, Hawaii, for plaintiffs-appellants Hou Hawaiians and Nui Loa Price.
 Kamuela Price, Haleiwa, Hawaii, pro se.
 Charlotte E. Libman, Deputy Atty. Gen., Honolulu, Hawaii, for defendants-appellees.
 Cynthia Thielen, Honolulu, Hawaii, for amicus curiae Office of Hawaiian Affairs.
 Appeal from the United States District Court for the District of Hawaii.
 Before SCHROEDER and CANBY, Circuit Judges, and KEEP,* District Judge.
 ORDER
 The panel has voted to amend its opinion filed on September 25, 1990, 915 F.2d 469, in conformity with the Amended Opinion attached.
 With that amendment, the panel has voted to deny the petition for rehearing and to reject the suggestion for rehearing en banc.
 The full court has been advised of the suggestion for rehearing en banc and of the amended opinion and no judge of the court has requested a vote to rehear the matter en banc.
 The petition for rehearing is denied and the suggestion for rehearing en banc is rejected.
 OPINION
 CANBY, Circuit Judge.
 
 
 1
 Nui Loa Price, Kamuela Price and the Hou Hawaiians, a native Hawaiian tribal body, (hereinafter "Price"), appeal from the district court's dismissal of their action, brought under 42 U.S.C. Sec. 1983, for damages against the trustees of the Office of Hawaiian Affairs. Price alleges that the defendants contravened federal law restricting the management of Hawaiian lands previously held by the United States. The district court dismissed the action for failure to state a claim and for lack of subject matter jurisdiction. We reverse and remand the case to the district court.
 
 FACTS
 
 2
 When Hawaii achieved statehood, the United States ceded to the new State almost all of the Hawaiian lands to which the federal government held title. See Hawaii Admission Act, Pub.L. No. 86-3 (hereinafter the "Admission Act") Sec. 5(b), 73 Stat. 4, 5 (1959), as amended by the Hawaiian Omnibus Act, Pub.L. No. 86-624, 74 Stat. 411 (1960). At the same time, the United States imposed obligations upon Hawaii with respect to these lands. In particular, it specified that such lands, and the income from them
 
 
 3
 shall be held by [Hawaii] as a public trust for the support of the public schools and other public educational institutions, for the betterment of the conditions of native Hawaiians ... for the development of farm and home ownership ..., and for the provision of lands for public use. Such lands, proceeds, and income shall be managed and disposed of for one or more of the foregoing purposes in such manner as the constitution and laws of [Hawaii] may provide, and their use for any other object shall constitute a breach of trust for which suit may be brought by the United States.
 
 
 4
 See Admission Act Sec. 5(f).
 
 
 5
 In its constitution, Hawaii declared that it would hold a portion of the lands conveyed by Sec. 5(b) as a "public trust for native Hawaiians and the general public." Haw. Const. art. XII, Sec. 4. Subsequently, the Hawaiian legislature established the Office of Hawaiian Affairs (hereinafter the "OHA") to serve "native Hawaiians and Hawaiians." Haw. Const., art. XII, Sec. 6. The state funded the OHA in part by granting it a share of the income produced by the "public land trust" created out of the Sec. 5(b) lands. Haw.Rev.Stat. Sec. 10-3.[1]
 
 
 6
 In this suit, filed under 42 U.S.C. Sec. 1983, Price alleges that the trustees of the OHA have violated the Admission Act by managing income derived from Sec. 5(b) lands in a manner that contravenes Sec. 5(f) of the Act. More specifically, he contends that the trustees have comingled OHA's share of that income with other OHA funds; that they have expended none of it for the benefit of native Hawaiians; and that they have used it instead for purposes other than those listed in Sec. 5(f). See Complaint, pp 15, 14, 16.
 
 
 7
 Without filing an Answer to Price's Complaint, the trustees moved to dismiss the action. The district court granted the motion on the grounds that (A) the court lacks subject matter jurisdiction, and (B) the Complaint does not state a claim upon which relief can be granted. On appeal, Price takes issue with both of these rulings.
 
 DISCUSSION
 
 8
 Having accepted the Complaint's allegations as true, and having construed the Complaint in the light most favorable to Price, see Baker v. McNeil Island Corrections Ctr., 859 F.2d 124, 127 (9th Cir.1988), we hold that Price has stated a claim and that the district court has jurisdiction to hear it. We conclude therefore that the court's dismissal was erroneous.
 
 A. Failure To State A Claim
 
 9
 The district court found that Price has not stated a claim because the Admission Act does not impose the obligations that Price asserts the trustees have violated. This ruling is one of law and we review it de novo. See Thomas v. Carpenter, 881 F.2d 828, 829 (9th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 1475, 108 L.Ed.2d 612 (1990).
 
 
 10
 Section 5(f) of the Admission Act directed unequivocally that the lands conveyed to Hawaii in Sec. 5(b), and the income produced by them, "shall be managed and disposed of for one or more" of five stated purposes. Admission Act, Sec. 5(f). Because the OHA share of "public trust" income at issue in this case derives directly from the Sec. 5(b) lands, Sec. 5(f)'s limitation on uses applies to that income. In his Complaint, Price alleges that the trustees have expended the income on purposes other than those listed in Sec. 5(f). See Complaint, pp 14, 16. Thus, the Complaint states a claim to enforce the provisions of Sec. 5(f) of the Admission Act.
 
 
 11
 The fact that the trustees may, consistently with Sec. 5(f), spend the income for purposes other than to benefit native Hawaiians does not deprive Price of standing to bring his claim. We recently considered this very question, and determined that allegations such as those Price has made are sufficient to show an "injury in fact". See Price, 764 F.2d at 630.[2] In addition, allowing Price to enforce Sec. 5(f) is consistent with the common law of trusts, in which one whose status as a beneficiary depends upon the discretion of the trustee nevertheless may sue to compel the trustee to abide by the terms of the trust. See Restatement 2d of the Law of Trusts, Sec. 214(1), comment a; see also id. at Sec. 391 (stating that plaintiff with "special interest," beyond that of ordinary citizen, may sue to enforce public charitable trust).
 
 
 12
 The trustees argue that they may not be held liable for breaching the terms of Sec. 5(f) because the "OHA trust," which they manage and into which the OHA share of Sec. 5(f) income was placed, is distinct from the trust created by Sec. 5(f). Transferring a portion of the Sec. 5(f) trust income to a state agency, however, did not dissolve or dilute the restrictions on how that income may be spent. So long as Sec. 5(f) trust income remained in the hands of the state, as it did when transferred from the Sec. 5(f) corpus to the OHA corpus, the Sec. 5(f) obligations applied. Naturally, we accept that once the income has been "disposed of" or "use[d]" by the state, there are no Sec. 5(f) limitations on subsequent use; however, we reject the trustees' suggestion that Hawaii "disposed of" or "used" Sec. 5(f) trust income simply by transferring it to the OHA. Admission Act Sec. 5(f). Because the funds are still in state hands, Sec. 5(f)'s restrictions apply to the use or disposal of the income by OHA.
 
 
 13
 The trustees also maintain that, although Hawaii itself may be bound by Sec. 5(f), the trustees' obligations with respect to spending OHA funds are to state law alone. The trustees' position is squarely at odds with the principle of Sec. 1983 in general, and our recent Admission Act decisions in particular. Any ordinary policeman sued under Sec. 1983 defendant is, in his official function, a creature of the state, and his primary obligations are to state law; yet, he is not thereby relieved of the duty not to deprive persons of their federal rights. In a similar vein, the fourteenth amendment addresses itself to "states," but that does not mean that entities and agents inferior to states are incapable of violating the amendment by depriving citizens of due process and equal protection. See, e.g., Scheuer v. Rhodes, 416 U.S. 232, 235, 94 S.Ct. 1683, 1685, 40 L.Ed.2d 90 (1974) (holding that state governor and state university president were sueable under Sec. 1983 for due process violations). Furthermore, the defendants in Keaukaha II, officers of the Hawaiian Homes Commission, also answered to state law in the execution of their official functions; yet, they were held properly subject to a Sec. 1983 suit for breach of Sec. 5(f). See 739 F.2d at 1472.
 
 B. Subject Matter Jurisdiction
 
 14
 The district court concluded that it lacks jurisdiction to hear Price's suit for two independent reasons: first, Price's claim is state rather than federal in nature, and therefore Sec. 1983, the asserted basis of jurisdiction, is unavailable; second, Price's suit is against the trustees in their official capacities, and therefore barred by the eleventh amendment. These issues are reviewable de novo. See Keaukaha I, 588 F.2d at 1224-27 (federal nature of claim); Keaukaha II, 739 F.2d at 1471-72 (same); BV Engineering v. University of California at Los Angeles, 858 F.2d 1394, 1395 (9th Cir.1988) (eleventh amendment immunity), cert. denied, 489 U.S. 1090, 109 S.Ct. 1557, 103 L.Ed.2d 859 (1989).
 
 1. Nature of Price's claim
 
 15
 The right Price claims is indeed federal; thus, he has not failed to meet this requirement of Sec. 1983. See 42 U.S.C. Sec. 1983; Parratt v. Taylor, 451 U.S. 527, 536, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981) (Sec. 1983 plaintiff must allege deprivation of federal, not state, right). In Keaukaha II, we held that the right asserted by the plaintiffs was federal because it was "specifically protected by an Act of Congress, the Admission Act, Sec. 5(f)." 739 F.2d at 1472. The Sec. 5(f) trust obligation, we said, was "rooted in federal law." Id. Moreover, we recently have characterized Keaukaha II as holding that "Sec. 5(f) of the Admission Act creates a federal 'right' enforceable under 42 U.S.C. Sec. 1983." Price, 764 F.2d at 628; see also Ulaleo v. Paty, 902 F.2d 1395, 1397 (9th Cir.1990). The source of the right Price asserts here is precisely the same as the source of the right claimed in Keaukaha II, namely Sec. 5(f) of the Admission Act. Hence, the right Price asserts also is federal, and Sec. 1983 is available.
 
 2. Applicability of the eleventh amendment
 
 16
 Price is suing the trustees in their individual, rather than official, capacities, and thus his suit is not barred by the eleventh amendment. See Blaylock v. Schwinden, 862 F.2d 1352, 1354 (9th Cir.1988) (noting that eleventh amendment does not prohibit individual capacity suits); cf. Kentucky v. Graham, 473 U.S. 159, 165-67, 105 S.Ct. 3099, 3104-06, 87 L.Ed.2d 114 (1985) (observing that official capacity suits are equivalent to suits against the entity itself, and raise eleventh amendment concerns where the entity is a state). Although the Complaint does not expressly state that Price is suing the trustees themselves, as opposed to the state, the "basis of the claims asserted and nature of relief sought" imply that this must be so. See Central Reserve Life Ins. Co. v. Struve, 852 F.2d 1158, 1161 (9th Cir.1988) (relying on these factors, rather than on caption of complaint, to determine capacity in which defendant is being sued).
 
 
 17
 By seeking damages under Sec. 1983, the Complaint indicates that the intended defendants are the trustees as individuals. See Blaylock, 862 F.2d at 1354 ("[D]amage actions brought under 42 U.S.C. Sec. 1983 are generally viewed as suits against the individual"); Demery v. Kupperman, 735 F.2d 1139, 1145-46 (9th Cir.1984) (construing Sec. 1983 damage action as individual capacity suit), cert. denied, 469 U.S. 1127, 105 S.Ct. 810, 83 L.Ed.2d 803 (1985). To sue Hawaii itself, by proceeding against the trustees in their official capacities, would have been inconsistent with the very nature of Price's claim, since Sec. 1983 applies only to deprivations of federal rights by "persons," and Hawaii is not a person under the statute. See 42 U.S.C. Sec. 1983; Will v. Michigan Dep't of State Police, 491 U.S. 58, 109 S.Ct. 2304, 2307-08, 105 L.Ed.2d 45 (1989).[3]
 
 
 18
 The trustees argue, and the district court found, that Price's suit must be against the trustees in their official capacities because the Complaint's allegations concern the trustees' conduct while performing their official functions. This argument confuses the capacity in which a defendant is sued with the capacity in which the defendant was acting when the alleged deprivation of rights occurred. The former need not coincide with the latter. Clearly, under Sec. 1983, a plaintiff may sue a state officer in his individual capacity for alleged wrongs committed by the officer in his official capacity. See, e.g., Blaylock, 862 F.2d at 1354 (observing that plaintiff who alleged failure by governor to administer certain law could avoid eleventh amendment bar by amending complaint to claim only damages against governor in his individual capacity); Demery, 735 F.2d at 1146 (construing as individual capacity suit an action against state medical board supervisor who enforced allegedly ineffective disciplinary order of board).[4]
 
 CONCLUSION
 
 19
 The district court erred in concluding that Price has not stated a claim, and that the court is without jurisdiction to hear it. The order of dismissal is therefore REVERSED, and the case is REMANDED.
 
 
 
 *
 The Honorable Judith N. Keep, United States District Judge for the Southern District of California, sitting by designation
 
 
 [1]
 Among the lands expressly conveyed by Sec. 5(b) were those known as the Hawaiian "homelands". A "compact" between Hawaii and the United States strictly limits the manner in which Hawaii may manage the homelands and the income they produce. See Admission Act Sec. 4; Keaukaha-Panaewa Community Ass'n v. Hawaiian Homes Comm'n, 588 F.2d 1216, 1218-19 (9th Cir.) ("Keaukaha I "), cert. denied, 444 U.S. 826, 100 S.Ct. 49, 62 L.Ed.2d 33 (1979); Keaukaha-Panaewa Community Ass'n v. Hawaiian Homes Comm'n, 739 F.2d 1467, 1469 (9th Cir.1984) ("Keaukaha II "); Price v. Hawaii, 764 F.2d 623, 625 (9th Cir.1985), cert. denied, 474 U.S. 1055, 106 S.Ct. 793, 88 L.Ed.2d 771 (1986). The "public land trust" created by the Hawaiian constitution, however, does not include the homelands. See Haw. Const., art. XII, Sec. 4. Consequently, the trust proceeds granted to the OHA are unrelated to the homelands, see Haw.Rev.Stat. Sec. 10-3; and whether State officials are managing the homelands and the income they produce in conformity with the compact between Hawaii and the United States is not at issue in this case
 
 
 [2]
 The trustees argue that the Price decision on standing does not apply to this case because the relief sought in Price was prospective, while the relief sought here is retrospective. That difference, however, does not affect standing. We held in Price that native Hawaiians had standing to compel future compliance with the terms of Sec. 5(f) even though compliance would not necessarily result in use of Sec. 5(f) assets to benefit native Hawaiians. Following that precedent, we hold here that Price, as a native Hawaiian, has standing to seek redress for past violations of Sec. 5(f) even though that redress may not necessarily benefit native Hawaiians. Moreover, we note that counsel for Price asserted at oral argument that among the state-authorized purposes for which the OHA may spend its funds, only one--the benefit of native Hawaiians--is authorized by Sec. 5(f). If Price succeeds in proving that the trustees have misappropriated Sec. 5(f) income and must return it to the OHA or Sec. 5(f) trust, he might attempt to show, perhaps in a pendent claim, that the returned money must be used to benefit native Hawaiians. Thus, Price has a real stake in enforcing the terms of Sec. 5(f)
 
 
 [3]
 Only if Price had sought prospective relief could this inconsistency have been avoided; such an action against the trustees in their official capacities would not have been an action against the state. See Will, 109 S.Ct. at 2311 n. 10. Price, however, has not sought prospective relief in his Complaint
 
 
 [4]
 Mitchell v. Los Angeles Community College Dist., 861 F.2d 198 (9th Cir.1988), cert. denied, 490 U.S. 1081, 109 S.Ct. 2102, 104 L.Ed.2d 663 (1989), does not support the trustees' position. Mitchell held that the defendants in that case "share[d] in [the state's] eleventh amendment immunity because they were sued in their official capacities." It did not expressly state the basis on which it had decided that the action was an official capacity suit. See id. at 201-02. In that case, it was apparently undisputed that the plaintiffs were seeking damages from a California community college district, and that the officials of the district were being sued in their official capacity. The question was whether, under California law, the district should be regarded as a state agency. In this case, the plaintiffs have disavowed any claim for state funds, and have made it clear they are seeking damages from the personal estates of the individual defendants. The defendants therefore do not share the state's immunity from this suit