Sue KRUSE and Lance Caspary, on behalf of themselves and their minor son Kanoa, Plaintiffs–Appellants,

v.

STATE OF HAWAI'I, et al., Defendants–Appellees.

No. 94–16519.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 1, 1995.

Decided Oct. 12, 1995.

---

Carl M. Varady, Honolulu, Hawaii, for plaintiffs-appellants.

Steven S. Michaels, Deputy Attorney General, Honolulu, Hawaii, for defendants-appellees.

Before: PREGERSON, KOZINSKI, and HAWKINS, Circuit Judges.

PREGERSON, Circuit Judge:

Plaintiffs–Appellants, Sue Kruse and Lance Caspary, filed a 42 U.S.C. § 1983 action in state court against the State of Hawai‘i and employees of Hawaii's Department of Human Services ("DHS") for allegedly violating their various rights under the U.S. Constitution and state law. The State removed the case to federal court. The district court granted the State's motion for judgment on the pleadings on claims barred by the Eleventh Amendment and on the supervisory liability claims. The court also granted the State's motion for summary judgment on the qualified immunity issue. The court then remanded the state law claims to state court.

Kruse filed the instant appeal. She claims that the district court did not have jurisdiction because the action was improperly removed. Kruse also claims that the district court erred as a matter of law in: (1) finding that Kruse's claims for injunctive relief against DHS officials in their official capacity were retroactive and therefore barred by the Eleventh Amendment; (2) ruling that the officials were entitled to qualified immunity; and (3) admitting certain pieces of evidence. We have jurisdiction under 28 U.S.C. § 1291. We affirm.

## I. BACKGROUND

On July 7, 1991, Kruse gave birth to her son Kanoa. The next day, the hospital staff found that Kanoa was jittery and easily arousable, and that Kruse's breath smelled of marijuana. A urine test revealed the presence of marijuana in Kanoa's system. A hospital social worker reported the results to Child Protective Services ("CPS"), a division of Hawaii's Department of Human Services ("DHS"). That afternoon, Kruse allegedly admitted to a CPS caseworker that she occasionally used marijuana and smoked it once a week during her pregnancy.

On July 10, 1991, Luana Ogi, a CPS social worker, visited Kruse's home. During the visit, Kruse allegedly told Ogi that she smoked marijuana when she was on her way to the hospital to give birth to Kanoa. Kruse then agreed to participate in a family support services program, Mothers and Infants Support Team ("MIST").

During this time, Kruse was employed as a child care worker at the Mauna Lani School, a child care facility under the jurisdiction of DHS. Under Hawai‘i Administrative Rules ("HAR"), a child care facility can terminate an employee if the employee's employment history indicates that the employee may pose a danger to children because of prior acts of violence, drug, or alcohol abuse, or if the employee "has been identified as, and substantiated to be the perpetrator of child abuse or neglect."[1]

Some time before July 19, 1991, Kruse allegedly told Angela Thomas, her employer, that she had used marijuana and was under CPS investigation. On July 19, 1991, Ogi

1. *See* HAR §§ 17–892–3(e), 17–892–17(b)(3), (b)(4).

related the facts of Kruse's investigation to Deborah Arnett, a DHS official responsible for overseeing the Mauna Lani School. Arnett asked that Kruse submit to a drug test as a condition of her continued employment. On July 25, 1991, Kruse agreed to submit to a drug test but requested a delay of thirty days before taking the test so that she would be certain to test negative.

On August 7, 1991, officials of MIST (the family support services program) found that Kruse was in a high risk situation because (1) she was potentially addicted to marijuana and cigarettes, (2) she and Caspary were not married, (3) her job was potentially at risk because of her drug use, and (4) Kanoa was her first child. MIST officials recommended that Kruse enter a drug rehabilitation program, that CPS monitor Kanoa's condition, that Kruse and Caspary enter counseling, and that Kruse be tested for drugs.

Kruse refused to take a drug test. On August 29, Thomas fired Kruse. The termination letter stated that Kruse was being fired because the *in utero* transmission of marijuana to a fetus constitutes "abuse and neglect of the child," which disqualifies Kruse from working at a child care facility. Thomas told CPS that she would not rehire Kruse because Kruse's marijuana use had become known in the community, and that this situation could harm the preschool's reputation.

On July 2, 1993, Kruse and Caspary, on behalf of themselves and Kanoa ("Kruse"), filed the instant suit in state court against the State of Hawai'i and various DHS and CPS employees in their official and individual capacities (collectively "the State"). Kruse argued that under Hawai'i law, there was no legal basis for CPS to intervene in traditional family relationships based on *prenatal* exposure to parental drug-use, and claimed negligence, negligent hiring, emotional distress, and interference with contractual relations. Kruse also claimed that the State's failure adequately to hire, supervise, train, instruct, and control CPS employees violated Kruse's federal constitutional right to privacy and due process. Kruse sought declaratory, injunctive, and monetary relief.

The State removed the case to federal court pursuant to 28 U.S.C. § 1441(b), and moved for judgment on the pleadings under Fed.R.Civ.P. 12(c), and/or summary judgment under Fed.R.Civ.P. 56. Kruse moved for abstention, requesting the district court to abstain until the Hawai'i courts first determine whether a fetus is a "child" and therefore subject to CPS protection under Hawai'i law.

The district court denied Kruse's motion for abstention and granted the State's motion for judgment on the pleadings on the supervisory liability claims and on the claims barred by the Eleventh Amendment. The district court also granted the State's motion for summary judgment in favor of the DHS employees on the ground that they were entitled to qualified immunity. The district court then remanded the state law claims to state court. Kruse now appeals.

## II. SUBJECT MATTER JURISDICTION

■ Kruse argues that the district court lacked subject matter jurisdiction over this case because it was improperly removed from state court. "Removal is a question of federal subject matter jurisdiction and is reviewed de novo." *Harris v. Provident Life and Acc. Ins. Co.,* 26 F.3d 930, 932 (9th Cir.1994).

■ Kruse did not object to the removal at the district court level. Where a party fails to object to removal and the case is tried on the merits, the threshold question on appeal is not whether the action was properly removed but "whether the federal district court would have had original jurisdiction of the case' at final judgment." *Harris,* 26 F.3d at 932 (quoting *Grubbs v. General Elec. Credit Corp.,* 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972)) (the "*Grubbs* rule").

Although Kruse did not object to removal until this appeal, the case must have been "tried on the merits" for the *Grubbs* rule to apply. *See Stone v. Stone,* 632 F.2d 740, 742 (9th Cir.1980), *cert. denied,* 453 U.S. 922, 101 S.Ct. 3158, 69 L.Ed.2d 1004 (1981). Here, the district court granted judgment on the pleadings on the supervisory liability claims and on the claims barred by the Eleventh Amendment, granted summary judgment on

the qualified immunity issue, and remanded the state law claims to state court.

The *Grubbs* rule applies when the merits are determined on a motion for summary judgment but it does not apply when the district court grants a *partial* summary judgment and remands the state law claims. *See Stone,* 632 F.2d at 742 (distinguishing summary judgment on *all* claims from partial summary judgment and remand of state law claims). Here, the district court's grant of partial summary judgment does not qualify as a decision on the merits under the *Grubbs* rule. Thus, we must ask whether removal was proper.

## A. Removal Jurisdiction

■ Kruse argues that when the Eleventh Amendment bars some of the claims of an action in federal court, the action cannot be removed from state court.

In *McKay v. Boyd Construction Co.,* 769 F.2d 1084, 1086–87 (5th Cir.1985), the Fifth Circuit ruled that because the Eleventh Amendment barred certain claims of an action, removal was improper because the federal court did not have jurisdiction over *all* of the claims asserted in the action. Similarly, in *Frances J. v. Wright,* 19 F.3d 337, 340 (7th Cir.1994), *cert denied,* —— U.S. ——, 115 S.Ct. 204, 130 L.Ed.2d 134 (1994), the Seventh Circuit held that the removal statute only authorized the removal of "actions" that were within the jurisdiction of the federal court. The court reasoned that barring the removal of such actions promoted judicial economy because rather than splitting the claims, they could all be heard together in state court. *Id.* at 341.

Following the logic of *Frances J.* and *McKay,* district courts in our circuit have ruled that they lack jurisdiction over cases containing Eleventh Amendment immunity claims. *See Robinson v. State of Cal.,* 836 F.Supp. 717 (N.D.Cal.1993); *Simmons v. State of Cal., Dept. of Indus. Rel.,* 740 F.Supp. 781 (E.D.Cal.1990); *Kelly v. State of*

*Cal.,* 687 F.Supp. 1494 (D.Nev.1988); *Stephans v. State of Nev.,* 685 F.Supp. 217 (D.Nev.1988).

The Sixth Circuit, however, has ruled that an Eleventh Amendment bar against some of the claims of an action does not bar the removal of that action. *Henry v. Metropolitan Sewer Dist.,* 922 F.2d 332 (6th Cir.1990). In *Henry,* the plaintiff brought a § 1983 action in state court against a state agency and the agency's employees in their official and individual capacities. When the agency removed the case to federal court, the district court dismissed the claims that were barred by the Eleventh Amendment. The district court then granted summary judgment on the qualified immunity issue for the officials in their individual capacities and remanded the pendent state law claims to state court. On appeal, the Sixth Circuit held that the Eleventh Amendment bar of the claims against the state did not deprive the district court of jurisdiction over the other claims.[2] *Id.* at 338.

Relying on *Pennhurst State School and Hospital v. Halderman,* 465 U.S. 89, 120–21, 104 S.Ct. 900, 918–19, 79 L.Ed.2d 67 (1984), the Sixth Circuit reasoned that because the Eleventh Amendment is a jurisdictional bar against particular *claims,* and not entire *cases,* the Eleventh Amendment bar against certain claims within a removed action should not deprive the district court of its otherwise proper jurisdiction over the action. *Henry,* 922 F.2d at 338.

In *Pennhurst,* the Supreme Court held that federal courts may not exercise pendent jurisdiction over state law claims that are barred by the Eleventh Amendment. 465 U.S. at 120–21, 104 S.Ct. at 918–19. In so holding, the Court instructed federal courts to "examine each *claim* in a case to see if the court's jurisdiction over that claim is barred by the Eleventh Amendment." *Id.*

We followed this logic in *Roberts v. College of the Desert,* 870 F.2d 1411, 1415 (9th Cir. 1988). There, the plaintiff sued a state col-

---

2. The court also ruled that the claims barred by the Eleventh Amendment should have been remanded to state court rather than dismissed. In the instant case, the district court did not remand the claims against the State and the offi-

cials in their official capacities because under *Will v. Michigan,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), they are not "persons" as defined by § 1983, and thus the defendants could not be sued in state court either.

lege and its officials for sex discrimination. We held that "[e]ven if the College is shielded from suit by the state's sovereign immunity, we have jurisdiction to consider the merits of Robert's appeal because she could still recover from the individual defendants in their individual capacity." *Id.; see also Silver v. Baggiano,* 804 F.2d 1211 (11th Cir. 1986) (in action removed from state court, proper to remand claims barred by Eleventh Amendment but to rule on other claims of the action).

For the foregoing reasons, we adopt the better-reasoned approach of the Sixth Circuit and hold that an Eleventh Amendment bar against some of the claims of an action does not prevent removal of the action. Accordingly, the district court had jurisdiction over the instant case because it was properly removed from state court.

### III. CLAIMS AGAINST THE OFFICIALS IN THEIR *OFFICIAL* CAPACITY

■ The district court found that Kruse lacked standing to bring a suit for injunctive relief and that her claims against the State officials in their official capacities were barred by the Eleventh Amendment because she sought retroactive relief. We review Eleventh Amendment immunity decisions and questions of standing de novo. *Price v. Akaka,* 928 F.2d 824, 827 (9th Cir.), *cert. denied,* 502 U.S. 967, 112 S.Ct. 436, 116 L.Ed.2d 455 (1991); *Coverdell v. Dept of Social and Health Services,* 834 F.2d 758, 766 (9th Cir.1987).

■ To obtain injunctive relief, " '[a] reasonable showing' of a 'sufficient likelihood' that plaintiff will be injured again is necessary." *Sample v. Johnson,* 771 F.2d 1335, 1340 (9th Cir.1985), *cert. denied,* 475 U.S. 1019, 106 S.Ct. 1206, 89 L.Ed.2d 319 (1986).

Kruse claims that CPS will likely continue to monitor how she raises her child and will likely interfere with her future employment as a child care worker by disclosing the facts of her case to potential employers. Kruse thus asked the court to order CPS: (1) to refrain from taking any further action against her and her family, (2) to refrain from reporting Kruse as a child abuser to any state, federal or local agency, (3) to expunge any negative information from her record, and (4) to inform her former employer and any local, state, and federal agencies who had access to any negative information that such information had been expunged.

■ Kruse has failed to make a "reasonable showing" of a "sufficient likelihood" that CPS will violate her constitutional right to privacy and family autonomy in the future. Kruse has not offered any proof that CPS intends to report her as a child abuser to any federal, state, or local agency. Nor has she demonstrated that CPS actually reported her as a child abuser; nor that local, State, or federal agencies, have a record on her other than the original CPS investigation. Finally, Kruse has not shown that the negative information she seeks to have expunged even exists in her record.

Because Kruse has failed to show a sufficient likelihood that CPS will violate any of her rights in the future, Kruse lacks standing to seek injunctive relief against CPS. Accordingly, we need not address whether the relief Kruse sought was retroactive.

### IV. QUALIFIED IMMUNITY FOR THE OFFICIALS IN THEIR *INDIVIDUAL* CAPACITIES

■ Kruse argues that the district court erred when it granted the CPS employees summary judgment on the qualified immunity issue. A grant of summary judgment on the basis of qualified immunity is reviewed de novo. *See Alexander v. City and County of San Francisco,* 29 F.3d 1355, 1359 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 735, 130 L.Ed.2d 638 (1995). When a public official asserts qualified immunity from liability in a § 1983 action, we must determine whether (1) the law governing the official's conduct was clearly established and (2) whether under that law, an official could have reasonably believed the conduct was lawful. *Act Up!/Portland v. Bagley,* 988 F.2d 868, 871 (9th Cir.1993).

## A. Clearly Established Right

While the right the official is alleged to have violated must have been "clearly established" in a "particularized" sense, "this is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ... but it is to say that in light of the pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

■ Kruse argues that it was clearly established that the state could not recommend counseling or drug testing unless there is an "emergency" threat of immediate significant injury to a child's health and welfare. *See Robison v. Via*, 821 F.2d 913 (2d Cir.1987).[3] Kruse argues that she has a right to be free from state intervention in all other circumstances. No case supports that conclusion.

Although a parent has a constitutionally protected interest in the care and custody of her child, the interest is not absolute. *Caldwell v. LeFaver*, 928 F.2d 331 (9th Cir.1991). "The interest of the parents must be balanced against the interests of the state, and when conflicting, against the interests of the children." *Woodrum v. Woodward County*, 866 F.2d 1121, 1125 (9th Cir.1989). Kruse's proposition that an "emergency" is the only circumstance in which the state may intervene is simply wrong. The State's interest in protecting a child from a reasonably foreseeable risk of harm is certainly a significant interest against which Kruse's parental interest must be balanced.

Kruse also argues that there is a liberty interest in being free from state intervention for harm to a *fetus*. Under Hawai'i law, the State is authorized to intervene to protect a *child*. Kruse points out that a child is defined as "a person born alive and is less than eighteen years of age." Haw.Rev.Stat. § 587–2. However, as Kruse herself argued in her motion for abstention, whether a fetus

is a "child" under Hawaii law is an undecided question.[4]

Where there is no clear precedent, we can look to other decisional law, including other state court decisions, to determine whether a right is clearly established. *Tribble v. Gardner*, 860 F.2d 321, 324 (9th Cir.1988), *cert. denied*, 490 U.S. 1075, 109 S.Ct. 2087, 104 L.Ed.2d 650 (1989). However, the out-of-circuit cases upon which Kruse relies do not support her position.

*People v. Hardy*, 188 Mich.App. 305, 469 N.W.2d 50 (1991), and *Reyes v. Superior Court In and For San Bernardino County*, 75 Cal.App.3d 214, 141 Cal.Rptr. 912 (1977), held that the state could not bring criminal charges against a mother for prenatal drug use. In this case, no criminal charges were brought against Kruse. Unlike in *Cox v. Court of Common Pleas of Franklin County*, 42 Ohio App.3d 171, 537 N.E.2d 721 (Ohio App.1988), *Matter of Steven S.*, 126 Cal. App.3d 23, 178 Cal.Rptr. 525 (1981), and *Matter of Dittrick Infant*, 80 Mich.App. 219, 263 N.W.2d 37 (1977), the State here did not attempt to interfere with Kruse's parental rights *before* Kanoa was born. CPS suggested counseling and drug testing when Kanoa's urine test, performed *after* he was born, showed the presence of marijuana in his system. We find nothing wrong (and, quite frankly, a good deal right) with such a practice.

Because Kruse did not have a clearly established right to be free from State intervention in the form of suggested counseling and a drug test, we need not decide whether the State officials reasonably believed that they acted lawfully. Therefore, the CPS employees are entitled to qualified immunity as a matter of law. This being the case, we need not reach Kruse's evidentiary objections, which pertain to the reasonableness of CPS employees' conduct.

---

**3.** However, the "emergency standard" for state intervention applies when the state temporarily deprives a parent of her constitutionally protected "liberty" interest in the *custody* of the child, without first receiving a court order or without parental consent. *Id.* at 921–22; *see also Baker*

*v. Racansky*, 887 F.2d 183, 187–89 (9th Cir. 1989). CPS did not deprive nor seek to deprive Kruse of the custody of her child.

**4.** We do not decide this question today.

CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.