**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

VIRGIL E. DAY; MEL
HOOMANAWANUI; JOSIAH L.
HOOHULI; PATRICK L.
KAHAWAIOLAA; SAMUEL L.
KEALOHA, JR.,
            *Plaintiffs-Appellants*

v.

HAUNANI APOLIONA, individually
and in her official capacity as
Chairperson and Trustee of the
Office of Hawaiian Affairs;
ROWENA AKANA; DANTE
CARPENTER; DONALD CATALUNA;
LINDA KEAWE'EHU DELA CRUZ;
COLETTE Y. PI'IPI'I MACHADO;
BOYD P. MOSSMAN; OSWALD
STENDER; JOHN D. WAIHE'E, IV,
Trustees of the Office of Hawaiian
Affairs of the State of Hawaii
sued in their official capacities for
declaratory and prospective
injunctive relief sued in individual
capacities for damages; CLAYTON
HEE; CHARLES OTA, Former
Trustees of the Office of Hawaiian
Affairs of the State of Hawaii,
sued in their individual capacities
for damages,
            *Defendants-Appellees,*

STATE OF HAWAII,
      *Defendant-Intervenor-Appellee.*

No. 08-16704

D.C. No.
1:05-CV-00649-
SOM-BMK

OPINION

10687

Appeal from the United States District Court
for the District of Hawaii
Susan Oki Mollway, Chief District Judge, Presiding

Argued and Submitted
October 13, 2009—Honolulu, Hawaii

Filed July 26, 2010

Before: Robert R. Beezer, Susan P. Graber and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge Fisher

## COUNSEL

Walter R. Schoettle (argued), Honolulu, Hawaii, for the plaintiffs-appellants.

Robert G. Klein (argued), Lisa W. Cataldo and Lisa M. Ezra, McCorriston Miller Mukai MacKinnon LLP, Honolulu, Hawaii, for the defendants-appellees.

Mark J. Bennett (argued), William J. Wynhoff, Department of the Attorney General, State of Hawaii, Honolulu, Hawaii, for the intervenor-appellee.

## OPINION

FISHER, Circuit Judge:

Plaintiffs are "native Hawaiians," defined in section 201(a) of the Hawaiian Homes Commission Act, Pub. L. No. 67-34, 42 Stat. 108 (1921) ("HHCA"), to mean "any descendant of not less than one-half part of the blood of the races inhabiting the Hawaiian Islands previous to 1778."[1] As such they are beneficiaries of a "public trust" created in the Hawaii Admission Act, Pub. L. No. 86-3, 73 Stat. 4 (1959) ("Admission Act"). They contend that the trustees of the Office of Hawaiian Affairs ("OHA"), a Hawaii state agency that administers a portion of the public trust's proceeds, breached the trust. Plaintiffs appeal from the district court's grant of summary judgment to the OHA trustees. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## I.  BACKGROUND

### A.  The § 5(f) Trust

The Admission Act granted to the State of Hawaii title to most of the federal government's public land within the state. *Id.* § 5(b)-(e), 73 Stat. at 5-6. Section 5(f) of the Admission Act requires the state to hold much of that land and profits from it in "public trust" (the "§ 5(f) trust") for five enumerated purposes. *Id.* § 5(f), 73 Stat. at 6. One such purpose is

---

[1]We use the term "native Hawaiian" in this way throughout the opinion. By contrast, we use the term "Hawaiian" to include any descendant of the indigenous peoples of the islands of Hawaii, regardless of proportional ancestry. *Cf.* Haw. Rev. Stat. § 10-2.

"for the betterment of the conditions of native Hawaiians, as defined in the Hawaiian Homes Commission Act." *Id.* The other purposes — for public schools, development of farm and home ownership, public improvements and the provision of land for public use — are not limited to native Hawaiians. *Id.* After setting forth these purposes, § 5(f) further specifies that the trust "shall be managed and disposed of for one or more of the foregoing purposes in such manner as the constitution and laws of said State may provide, and their use for any other object shall constitute a breach of trust." *Id.* Hawaii has provided that a portion of the § 5(f) trust's proceeds shall be administered by OHA.

## B.   OHA's Portion of the § 5(f) Trust

OHA is a Hawaii state agency that administers a portion of the § 5(f) trust's proceeds as well as some other funds. *See generally* Haw. Rev. Stat. ch. 10. In particular, state law entitles OHA to receive "[t]wenty per cent of all funds derived from" the § 5(f) trust, Haw. Rev. Stat. §§ 10-3, 10-13.5, and requires this portion of the § 5(f) trust's proceeds to "be held and used [by OHA] solely as a public trust for the betterment of the conditions of native Hawaiians." *Id.* § 10-3.[2] State law thus appears to limit OHA's uses of § 5(f) trust proceeds to only one of the five purposes enumerated in the federal statute. *See Day v. Apoliona*, 496 F.3d 1027, 1029 (9th Cir. 2007) ("*Day I*") ("OHA receives a portion of the § 5(f) trust monies, which it is to devote 'to the betterment of the conditions of [n]ative Hawaiians.' " (quoting Haw. Rev. Stat. § 10-3)).

---

[2]Under state law, OHA's authority to use § 5(f) trust funds is also narrower than OHA's general authority, which includes promoting "the betterment of the conditions of native Hawaiians . . . *[and] Hawaiians*." Haw. Rev. Stat. § 10-3 (emphasis added); *see also id.* § 10-2 (defining "native Hawaiian" and "Hawaiian").

## C.   The Challenged Expenditures

Plaintiffs challenge four projects on which the OHA trustees have spent parts of its 20-percent share of the § 5(f) trust's proceeds.

**1. The Akaka Bill.** OHA used § 5(f) trust money to lobby for and support the proposed Native Hawaiian Government Reorganization Act of 2007, commonly referred to as the "Akaka Bill" after Senator Daniel Akaka of Hawaii, one of its chief proponents. The Akaka Bill would create a process through which the United States could recognize a governing entity for Hawaii's indigenous people. *See* Native Hawaiian Government Reorganization Act of 2007, S. 310, 110th Cong. (2007). The governing entity would have the power to establish its own criteria for citizenship. *Id.* § 7(c)(2)(B)(iii)(I)(aa). Initially, however, it would be governed by an "interim governing council," *id.* § 7(c)(2)(A), to be elected by "adult members of the Native Hawaiian community who elect to participate in the reorganization of the Native Hawaiian governing entity and are certified to be Native Hawaiian," *id.* § 7(c)(1)(A). For the purposes of the Akaka Bill, the term "Native Hawaiian" includes (essentially) any direct descendant of the indigenous people of Hawaii. *Id.* § 3(10). This definition is broader than the class of "native Hawaiians" (like plaintiffs) comprised only of individuals with "not less than one-half part" indigenous Hawaiian lineage. *See* HHCA § 201(a).

The Akaka Bill would expressly empower both the United States government and the State of Hawaii to negotiate and enter agreements with the Native Hawaiian governing entity regarding "the transfer of lands, natural resources, and other assets, and the protection of existing rights related to such lands or resources" and "the exercise of governmental authority over any transferred lands, natural resources, and other assets, including land use." Akaka Bill § 8(b)(1)(A)-(B).

**2. Native Hawaiian Legal Corporation ("NHLC").** NHLC identifies itself as "a non-profit corporation that specializes in Hawaiian land and Hawaiian rights issues." OHA used § 5(f) trust money to fund a contract with NHLC, under which NHLC agrees to render a range of legal services including "[a]ssertion and defense of quiet title actions," protection of water rights, "[p]reservation of Native Hawaiian Land Trust entitlements" and preservation of traditional practices and culturally significant places. The contract does not restrict NHLC to providing legal services to "native Hawaiians." Its recitals explain that OHA "has established a program whereby all Hawaiians can receive" certain legal services and that "the program is intended to better the conditions of all Hawaiians." In addition, the contract defines "Hawaiian" to include not only "native Hawaiians" under the HHCA (like plaintiffs) but also any descendant of the aboriginal peoples inhabiting the Hawaiian islands in 1778, without regard to proportional ancestry.

**3. Na Pua No'eau Education Program ("Na Pua").** Na Pua identifies itself as "a Hawaiian Culture-based Education Resource Center within the University of Hawaii . . . that provides educational enrichment program activities to Hawaiian children and their families." OHA used § 5(f) trust money to fund a contract with Na Pua. Na Pua does not appear to restrict the services it provides under the contract to "native Hawaiians" either generally or under the OHA contract.

**4. Alu Like, Inc.** Alu Like is a nonprofit service organization that strives to help Hawaiians achieve social and economic self-sufficiency by providing early childhood education, services to the elderly, employment preparation and training, library and genealogy services, specialized services for at-risk youth and information and referral services. OHA used § 5(f) trust money to fund a contract with Alu Like. Alu Like does not appear to restrict its services to "native Hawaiians" either generally or under the OHA contract.

## D.  Procedural History

Plaintiffs originally challenged these four OHA expenditures as a violation of (1) Admission Act § 5(f), enforceable under 42 U.S.C. § 1983; (2) the Equal Protection Clause of the Fourteenth Amendment; and (3) a state law duty of fidelity, *see* Haw. Rev. Stat. § 10-16(c). *See Day I*, 496 F.3d at 1030. The district court dismissed the complaint. *Id.* Plaintiffs did not contest the dismissal of the Equal Protection claims or the discretionary dismissal of the state law claims, but appealed the court's ruling that they failed to allege any Admission Act § 5(f) violation enforceable under § 1983. *See id.* On appeal we reversed and remanded, holding that "each native Hawaiian plaintiff, as a beneficiary of the trust created by § 5(f), has an individual right to have the trust terms complied with, and therefore can sue under § 1983 for violation of that right." *Id.* at 1039. We left it "to the district court . . . to determine in the first instance not only whether [plaintiffs'] allegations are true, but also whether the described expenditures in fact violate § 5(f)." *Id.*

On remand, the district court entered summary judgment in defendants' favor on the § 1983 claim. It held that each of the challenged expenditures was consistent with at least one of the five trust purposes enumerated in § 5(f). The district court implicitly concluded that the OHA trustees may, as a matter of federal law, spend § 5(f) money for any of the five enumerated purposes, rejecting plaintiffs' argument that federal law requires the OHA trustees to spend the portion of the § 5(f) trust they administer only for one particular § 5(f) purpose, namely the betterment of the conditions of native Hawaiians. The district court further found that the OHA trustees were "simultaneously and redundantly" entitled to qualified immunity because plaintiffs failed to establish any violation of federal law, let alone a clearly established one.

The State of Hawaii participated as amicus curiae in the district court proceedings from an early stage and successfully

moved for intervenor status during the first appeal. Hawaii filed an answering brief in this appeal proposing an alternative basis for affirming summary judgment.[3]

## II.  STANDARD OF REVIEW

A district court's statutory interpretation is a question of law we review de novo. *See Beeman v. TDI Managed Care Servs.*, 449 F.3d 1035, 1038 (9th Cir. 2006). We also review de novo a district court's grant or denial of summary judgment in a § 1983 action. *See Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 763 (9th Cir. 2006).

## III.  DISCUSSION

Plaintiffs allege that the OHA trustees have violated plaintiffs' federal rights under § 5(f) and 42 U.S.C. § 1983 by spending trust proceeds for impermissible purposes. In particular, plaintiffs contend they have a federal right, enforceable under § 1983, to require that the trust funds be managed "in such manner as the . . . laws of [Hawaii] may provide," that the laws of Hawaii require the OHA trustees to spend the portion of the § 5(f) funds they manage only "for the betterment of the conditions of native Hawaiians" (and *not* for any of the other purposes enumerated in § 5(f)) and that the OHA trustees have violated that requirement by spending § 5(f) funds on the four challenged expenditures. In the alternative, plaintiffs argue that, even if there is no violation of federal law so long as OHA trustees spend § 5(f) trust proceeds for *any* of the five purposes enumerated in § 5(f), these expenditures still demonstrate a breach of trust under federal law. Neither argument has merit.

---

[3]Plaintiffs incorrectly contend that Hawaii no longer has intervenor status in this appeal and that its Answering Brief should be stricken. Nothing in the order granting Hawaii's motion to intervene in the previous appeal suggests it was entitled to party status only for a limited purpose. *See Day v. Apoliona*, 505 F.3d 963, 966 (9th Cir. 2007) ("*Day II*") ("Hawaii could have and should have intervened earlier . . . .").

## A.   Federal Law Does Not Oblige the OHA Trustees To Use Trust Proceeds Only for Native Hawaiians

The district court implicitly rejected plaintiffs' first argument — that the OHA trustees, *as a matter of federal law*, must spend the portion of the § 5(f) trust they manage *only* "for the betterment of the conditions of native Hawaiians." We agree with the district court. Alleged violations of *state* laws regarding the management and disposition of § 5(f) funds are not necessarily breaches, under federal law, of the § 5(f) trust itself.

**[1]** Plaintiffs' contrary argument is based on the following text in the statute:

> The [§ 5(f) trust] shall be held by [Hawaii] as a public trust for the support of the public schools and other public educational institutions, for the betterment of the conditions of native Hawaiians, . . . for the development of farm and home ownership on as widespread a basis as possible[,] for the making of public improvements, and for the provision of lands for public use. Such lands, proceeds, and income shall be managed and disposed of for one or more of the foregoing purposes in such manner as the constitution and laws of said State may provide, and their use for any other object shall constitute a breach of trust . . . ."

Admission Act § 5(f).[4] The Admission Act ceded certain

---

[4]In full, this part of the statute ends ". . . use for any other object shall constitute a breach of trust *for which suit may be brought by the United States*." Admission Act § 5(f) (emphasis added). Our caselaw nonetheless interprets § 5(f) to create a *private* right of action for a breach of the federal trust. *See e.g.*, *Day I*, 496 F.3d at 1031-40; *Price v. Akaka*, 3 F.3d 1220 (9th Cir. 1993); *Keaukaha-Panaewa Cmty. Ass'n v. Hawaiian Homes Comm'n*, 739 F.2d 1467 (9th Cir. 1984). Although recent Supreme

property owned by the United States in the former territory of Hawaii to the new State of Hawaii to be held in public trust. *See* Admission Act § 5(b)-(e). The natural and logical reading of the quoted passage is that Congress, in transferring valuable assets from the United States to Hawaii, wanted to assure that those assets would be used for public benefits as spelled out in the five enumerated purposes. Use for any other purpose would be a breach of trust, a violation of federal dimension. So long as trust funds are used for "one or more" of the enumerated purposes, however, Congress intended to leave the manner in which the trust is managed in Hawaii's sovereign control.

Plaintiffs read the statute not simply as permitting Hawaii to decide, through state law, the manner in which the trust shall be managed, but investing any such discretionary, state-provided rules or restrictions with the status of federal law. According to plaintiffs, to the extent Hawaii law restricts the OHA trustees' spending authority over their portion of § 5(f) trust funds to uses benefitting only native Hawaiians, failure to comply with those restrictions violates not just state law but also § 5(f) itself. This construction of the statute does not withstand analysis.

**[2]** First, the only "breach of trust" § 5(f) refers to is "use" of funds "for any other *object*," referring to the enumerated spending purposes. *Id.* (emphasis added). It does not encompass any other restrictions under state law. Second, we find it implausible that Congress gave Hawaii discretion to choose

---

Court cases cast some doubt on this holding, we have held that they do not "undercut the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable," *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc), so the holding remains binding on our three-judge panels. *See Day I*, 496 F.3d at 1034-38 (discussing the effect of recent Supreme Court cases on the private right of action under § 5(f)).

how to manage the trust yet provided for federal intervention to enforce those choices, whatever they might be.

**[3]** Our reading is consistent with several of our cases assuming or suggesting that, as a matter of federal law, the only restriction that the statute places on § 5(f) trustees, including the OHA trustees with respect to the portion of the § 5(f) trust they administer, is that they use trust funds for enumerated purposes. In *Price v. Akaka*, 928 F.2d 824, 826 (9th Cir. 1991) ("*Akaka I*"), we assumed that § 5(f) did not require compliance with state law restrictions on the OHA trustees when we explained that "[t]he fact that the [OHA] trustees may, consistently with § 5(f), spend the income for purposes other than to benefit native Hawaiians does not deprive [native Hawaiian beneficiaries] of standing to [sue under § 1983 for enforcement of the trust conditions]." Similarly in *Price v. Akaka*, 3 F.3d 1220, 1222 n.3 (9th Cir. 1993) ("*Akaka II*"), we treated the question "[w]hether the trustees breached their fiduciary duties under Chapter 10 of the [Hawaii Revised Statutes]" as "a matter of state law which we do not reach." And when we considered this case in a previous appeal we noted that "neither our prior case law nor our discussion today suggests that *as a matter of federal law* § 5(f) funds must be used [by OHA trustees] for the benefit of [n]ative Hawaiians or Hawaiians, at the expense of other beneficiaries." *Day I*, 496 F.3d at 1033 n.9 (emphasis added).

**[4]** Accordingly, we affirm the district court's dismissal of plaintiffs' claims to the extent they contend that the OHA trustees violated federal law by spending for enumerated purposes other than "for the betterment of the conditions of native Hawaiians." So long as OHA trustees spend § 5(f) funds on any of the five enumerated purposes, they have not breached their federal trust obligations.

## B. The OHA Trustees Had Discretion To Contribute § 5(f) Trust Funds to the Challenged Projects

Plaintiffs contend in the alternative that, even if OHA trustees may spend for any of the § 5(f) trust purposes, they

breached the trust under federal law because each of the challenged projects was not restricted to one or more of the enumerated purposes. This argument is unpersuasive. Although the trustees are obliged to spend only for trust purposes, they have broad discretion to decide how to serve those purposes. The district court properly found that each of the challenged expenditures is sufficiently directed to one or more trust purposes to fall within the range of permissible spending.

## 1. Legal Standard

**[5]** We begin with the text of the statute. Section 5(f) of the Admission Act establishes a public trust and the purposes for which it may be used and then provides an express and narrow enforcement mechanism, specifying that "use for any other object shall constitute a breach of trust." Admission Act § 5(f). To establish a breach of trust under that section, therefore, plaintiffs must prove that trust funds were used for a purpose not enumerated in § 5(f).[5]

---

[5]As a corollary, the Admission Act does *not* impose upon the trustees all of the obligations trustees may generally be subject to under the common law of trusts. *Cf. Price v. Hawaii*, 921 F.2d 950, 955 (9th Cir. 1990) (holding that the state as manager of a public trust is not "manacle[d]" by "all provisions of the common law of trusts" and therefore is not required to keep trust funds segregated from nontrust funds or to abide by common law prudent-investment requirements); *id.* at 956 (reading the trust so as to "assure that the federal courts will not become involved in the micro management of the government of the State"). As previously noted, § 5(f)'s narrow enforcement mechanism is consistent with the historical context in which the trust was created and with Congress' interest as settlor: to ensure the trust would be used for the enumerated purposes while leaving control of the "manner" of its use to the state. *See* Admission Act § 5(f). This narrow interpretation of what may constitute a breach of the trust *under federal law* is also consistent with general trust law principles, which recognize that the inquiry into breach of trust depends in each case on the terms of the trust and the settlor's intent. *See* Restatement (Third) of Trusts § 50(2) ("[W]hat may constitute an abuse of discretion by the trustee . . . depend[s] on the *terms of the discretion . . . and on the settlor's purposes in granting the discretionary power and in creating the trust*.") (emphasis added). Although § 5(f) limits the scope of any cause of action for breach of trust *under federal law*, we express no opinion about the OHA trustees' obligations Hawaii state law may have imposed in regulating the manner in which the trust shall be managed.

The parties dispute what showing is necessary to establish that an expenditure is a "use for any other [nontrust] object." *Id.* To resolve this dispute, we look to the common law of trusts. *See Day I*, 496 F.3d at 1033-34; *Akaka I*, 928 F.2d at 826-27; *Price v. Hawaii*, 921 F.2d 950, 955 (9th Cir. 1990).

**[6]** Generally, a trustee's "power is discretionary except to the extent its exercise is directed by the terms of the trust or compelled by the trustee's fiduciary duties." Restatement (Third) of Trusts § 87 cmt. a. Because § 5(f) establishes broad "purposes" and does not direct specific expenditures, § 5(f) trustees "ha[ve] discretion (i.e., [are] to use fiduciary judgment)" to determine whether a particular use of trust funds serves one or more of the trust purposes. *Id.* Plaintiffs themselves have conceded that the trustees have broad discretion in determining what qualifies as use for a trust purpose.

**[7]** "When a trustee has discretion with respect to the exercise of a power, its exercise is subject to supervision by a court only to prevent abuse of discretion." *Id.* § 87. In the context of the narrow federal inquiry into whether an expenditure is a use for a trust purpose, an abuse of discretion occurs when a trustee "has acted unreasonably — that is, beyond the bounds of a reasonable judgment." *Id.* § 87 cmt. c. We therefore examine the challenged expenditures to determine whether any of them is beyond the bounds of a trustee's reasonable judgment that the project in question would serve § 5(f) trust purposes.

Plaintiffs urge that an expenditure is outside the bounds of a reasonable judgment unless it is "in the sole interest of . . . beneficiaries; provided that such expenditures may provide a collateral benefit to non-beneficiaries, but only so long as the primary benefits are enjoyed by . . . beneficiaries, and the collateral benefits do not detract from nor reduce the benefits enjoyed by the . . . beneficiaries." For example, they contend that projects that do not distinguish between "native Hawaiians" and "Hawaiians" cannot be a use "for the betterment of

the conditions of native Hawaiians" unless they ultimately direct more dollars or services to native Hawaiians than to others.

**[8]** We reject such a rule because nothing in the trust's terms or purposes either requires the kind of comparative analysis plaintiffs propose or suggests that Congress intended to prohibit expenditures whose benefits may extend beyond the trust's purposes. Absent express standards, courts apply " 'a general standard of reasonableness,' taking account of other terms and purposes of the trust." Restatement (Third) Trusts § 87 cmt. c. Under this standard, although the trustees must reasonably act in pursuit of trust purposes and no others, they are not required to ensure that a given expenditure will provide only "collateral benefits" to nonbeneficiaries or purposes not listed in the trust. *Cf. Akaka II*, 3 F.3d at 1226 (granting OHA trustees qualified immunity where they "reasonably believed that [funding] a referendum to determine Hawaiian opinion" on whether to expand the definition of "native Hawaiian" was for the "betterment of the conditions of native Hawaiians" without any showing that native Hawaiians would benefit more than or differently from non-native Hawaiians). The trustees need only ensure that each expenditure "is one that would . . . be accepted as reasonable by persons of prudence." Restatement (Third) Trusts § 87 cmt. c.

### 2. Application

Applying this standard, we affirm the district court's grant of summary judgment to the OHA trustees. The district court ably analyzed and rejected plaintiffs' argument that the challenged expenditures are outside the bounds of a reasonable judgment of a trustee acting to pursue § 5(f)'s purposes.

**[9]** *Akaka Bill*. The trustees had discretion to use § 5(f) funds to lobby for enactment of the Akaka Bill. Although it is possible that the processes the Akaka Bill envisions could dilute some benefits that native Hawaiians currently enjoy to

the exclusion of other Hawaiians, a trustee could reasonably conclude that the bill's benefits to the conditions of native Hawaiians outweigh any drawback and therefore choose to use trust proceeds to support it. *See, e.g.*, Akaka Bill § 8(b)(1)(A), (B), (F) (proposing to authorize the newly formed governing entity to negotiate matters such as the transfer and management of land and natural resources and "grievances regarding assertions of historical wrongs"). As the district court concluded, "[e]ven if the Akaka Bill is intended to benefit Hawaiians in general, the OHA trustees would not be unreasonable or arbitrary in viewing the Akaka Bill as also benefitting native Hawaiians."

[10] *NHLC*. The trustees had discretion to use § 5(f) funds for the NHLC contract. Among the "substantive areas" in which the contract requires NHLC to provide legal representation to Hawaiians is the "[p]reservation and perpetuation of traditional and customary practices [and] [p]rotection of culturally significant places, including burial sites and material culture." Under a general standard of reasonableness, it was within the trustees' broad discretion to determine that expanding the provision of legal services of this kind will "better[ ] . . . the conditions of native Hawaiians." Admission Act § 5(f).[6]

[11] *Na Pua*. So too was it reasonable for the trustees to fund the Na Pua contract. Na Pua is an educational center within the University of Hawaii, which the parties agree is "a public educational institution." The record shows that OHA gave Na Pua § 5(f) money to provide educational services to Hawaiians that would "connect [their] learning and education to [their] Hawaiian identity." A reasonable trustee could view this contract as serving at least two of the § 5(f) purposes —

---

[6]The district court also concluded that the NHLC contract serves other § 5(f) purposes. Because it was within the trustees' discretion to determine that the NHLC contract serves to better the conditions of native Hawaiians, we do not reach the question whether it also serves other § 5(f) purposes.

"support[ing] . . . public schools and other public educational institutions" and "betterment of the conditions of native Hawaiians." Nothing in § 5(f) suggests that it would be unreasonable to consider Na Pua a "public educational institution" even though it serves only Hawaiian students, and a trustee could reasonably believe that native Hawaiians will benefit from additional funding for education directed to Hawaiian culture and identity. As the district court found, "[n]ative Hawaiians stand to benefit if Hawaiian identity in general is preserved and pride in Hawaiian identity fostered."

**[12]** *Alu Like*. Finally, the OHA trustees had discretion to fund the Alu Like contract. That contract obligates Alu Like to provide "a comprehensive system for beneficiaries [including native Hawaiians and Hawaiians] to receive information, referrals, . . . case management, personal financial management, and emergency fund assistance" consistent with a proposal that Alu Like submitted to OHA. As the district court found, the trustees could have reasonably determined that the conditions of native Hawaiians would benefit from Alu Like's efforts to "help[ ] Hawaiians and native Hawaiians achieve social and economic self-sufficiency."

**[13]** In summary, there is no triable issue as to whether the OHA trustees had discretion to use § 5(f) funds for the challenged expenditures. Each was within the trustees' broad discretion to serve the trust purposes. Plaintiffs have failed to establish a violation of any federal statutory right, and the trustees are entitled to summary judgment on all of plaintiffs' § 1983 claims.

## C. Qualified Immunity

Because we affirm the district court's grant of summary judgment on the merits, we do not reach its alternative holding that the OHA trustees are "simultaneously and redundantly . . . entitled to qualified immunity."

### D. Hawaii's Alternative Argument in Support of Summary Judgment

We also do not reach the State of Hawaii's alternative argument in support of summary judgment, except insofar as it raises a jurisdictional issue. To the extent Hawaii contends that plaintiffs lack standing under its theory of the case, we disagree. Hawaii points out that the state spends far more each year on public education — one of the enumerated trust purposes — than it receives from the trust, and argues that this deprives any trust beneficiary of standing to bring a claim for breach of trust for lack of injury. In short, Hawaii contends that no beneficiary of the § 5(f) trust can claim to be injured so long as the federally mandated purposes collectively are receiving more from the state than the § 5(f) trust produces.

This argument fails because, as we have previously held, the § 5(f) obligations bind OHA trustees even after funds have been directed to OHA by the state. *See Akaka I*, 928 F.2d at 827 ("So long as § 5(f) trust income remained in the hands of the state, as it did when transferred from the § 5(f) corpus to the OHA corpus, the § 5(f) obligations applied."); *cf. Akaka II*, 3 F.3d at 1222 ("[T]he issue here is whether the [OHA] trustees breached their fiduciary duties under the Admission Act by expending trust funds for purposes other than those set out in § 5(f)."). How Hawaii spends other, nontrust money on trust purposes is irrelevant. Although § 5(f) gives Hawaii considerable flexibility to choose the manner in which it shall manage the trust, it cannot ignore the fundamental principle of trust law that a trustee's obligations (however broad or narrow they may be) apply with respect to the particular property or money *in the corpus.* Those obligations generally cannot be discharged through the use of property or money *outside the corpus. Cf. Akaka I*, 928 F.2d at 826 ("Because the OHA share of 'public trust' income at issue in this case derives directly from the § 5(b) lands, § 5(f)'s limitation on uses applies *to that income*." (emphasis added)); Restatement (Third) of Trusts § 2 ("Definition of Trust") ("A trust, as the

term is used in this Restatement . . . is a fiduciary relationship with respect to property . . . subjecting the person who holds title to the property to duties to deal with *it* for the benefit of charity or for one or more persons, at least one of whom is not the sole trustee." (emphasis added)).

## IV.   CONCLUSION

**[14]** We hold that, although § 5(f) permits Hawaii to impose further rules and restrictions on management of the § 5(f) trust, it does not require the state and its agents to abide by those rules and restrictions *as a matter of federal law*. Those alleged violations are actionable under state law, if at all. We therefore affirm the district court's summary judgment in favor of the OHA trustees. The trustees have established as a matter of law that each of the challenged expenditures constitutes a "use" "for one or more of the [§ 5(f)] purposes" and that is sufficient to defeat plaintiffs' § 1983 claim under federal law for breach of the § 5(f) trust.

**AFFIRMED.**