**DECKER COAL COMPANY, a Joint Venture, Plaintiff,**

v.

**The Honorable Mary Margaret (Peg) HARTMAN, Commissioner of the Montana State Department of Labor and Industry, Defendant.**

**United Mine Workers of America, Local Union No. 1972, representing 244 individual claimants, Intervenors.**

**No. CV 87–304–BLG–JFB.**

United States District Court, D. Montana, Billings Division.

Sept. 30, 1988.
On Motion for Reconsideration Feb. 28, 1989.

Paul D. Miller, Donna K. Davis, Holland & Hart, Billings, Mont., Jeffrey T. Johnson, Holland & Hart, Denver, Colo., for plaintiff.

Elizabeth L. Griffing, Dept. of Labor and Industry, Com'rs Office, Helena, Mont., for defendant.

Thomas E. Towe, Towe, Ball, Enright & Mackey, Billings, Mont., for intervenors.

## MEMORANDUM OPINION AND ORDER

BATTIN, Chief Judge.

Presently pending before the Court is plaintiff's Motion for Judgment on the Pleadings. For the reasons stated below, plaintiff's motion is granted.

### FACTS AND PROCEDURAL BACKGROUND

Plaintiff filed this action on December 3, 1987, seeking a declaratory ruling that Mont.Code Ann. § 39–51–2305(3) is unconstitutional, as preempted by the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* (NLRA). The subsection in question allows a striking worker, ordinarily disqualified from receiving unemployment benefits under § 39–51–2305(1), to receive benefits when the Montana State Department of Labor and Industry finds that the labor dispute is caused by an employer's failure to conform to the provisions of federal or state labor law. Plaintiff contends that jurisdiction to make a determination of unfair labor practices by an employer rests solely in the National Labor Relations Board (NLRB) under the provisions of the NLRA. To the extent that the Montana standard for eligibility for benefits is based upon the making of such a determination by a state agency, it is preempted. The defendants, on the other hand, argue that the statute in question is valid since it does not regulate or prohibit any conduct which is within the sphere of the NLRA, but, instead, serves only as a criteria for determining eligibility.

This Court previously denied motions to dismiss filed by the defendant and intervening defendants and reserved ruling on plaintiff's Motion for Judgment on the Pleadings until such time as the pleadings were closed. *See, Memorandum Opinion and Order* of March 29, 1988. All necessary pleadings having been filed, and the issues having been fully briefed and argued, the Court is prepared to issue its ruling at this time.

### DISCUSSION

As a preliminary matter, the Court considers it instructive to review the standards for grant or denial of a motion for judgment on the pleadings. To prevail, plaintiff must establish that "no material issue of fact remains to be resolved and that [it] is

entitled to judgment as a matter of law." *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802 (9th Cir.1988) (*citing Doleman v. Meiji Mutual Life Insurance Co.*, 727 F.2d 1480, 1482 (9th Cir.1984)). In this case, no material issues of disputed fact are raised by the pleadings. The legal issues involved are, therefore, appropriately addressed through the vehicle of a motion for judgment on the pleadings pursuant to Rule 12(c), Fed.R.Civ.P.

### I. *Preemption*

In enacting the NLRA, Congress evidenced an intent that the regulation of unfair labor practices in this nation be entrusted exclusively to the NLRB, "a centralized administrative agency, armed with its own procedures, and equipped with its specialized knowledge and cumulative experience ..." *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 242, 79 S.Ct. 773, 778, 3 L.Ed.2d 775 (1959). Congress, in doing so, "largely displaced state regulation of industrial relations ... [a]lthough some controversy continues over the Act's preemptive scope ..." *Wisconsin Department of Industry v. Gould*, 475 U.S. 282, 286, 106 S.Ct. 1057, 1061, 89 L.Ed.2d 223 (1986). It is, however, well established "that states may not regulate activity that the NLRA protects, prohibits, or arguably protects or prohibits." *Id.* "[That] rule is designed to prevent 'conflict in its broadest sense' with the 'complex and interrelated federal scheme of law, remedy, and administration.'" *Id.* (*citing Garmon*, 359 U.S. at 243, 79 S.Ct. at 778).

Here, the Court is concerned with a statute which, on its face, does not attempt nor purport to regulate or prohibit activities governed by the NLRA. *Cf., Gould*, 475 U.S. 282, 106 S.Ct. 1057. Instead, the statute was apparently intended simply to serve as a standard for determining eligibility for state unemployment benefits. However, eligibility hinges upon a finding (by the state agency) that the employer has committed an unfair labor practice. Because such a finding has financial and other consequences to defendant, the Court must go beyond the express statutory language and consider whether the statute, in effect, accomplishes what the state cannot do directly—namely, the regulation or prohibition of conduct within the sphere of the NLRA.

Congressional purpose is "'the ultimate touchstone' of pre-emption analysis." *Gould*, 475 U.S. at 290, 106 S.Ct. at 1063 (*quoting Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 1909, 85 L.Ed.2d 206 (1985). One of Congress' primary goals, in passing the NLRA and vesting jurisdiction over labor disputes in the NLRB, was to "obtain uniform application of its substantive rules and to avoid [the] diversities and conflicts likely to result from a variety of local procedures and attitudes toward labor controversies ... A multiplicity of tribunals and a diversity of procedures are quite as apt to produce incompatible or conflicting adjudications as are different rules of substantive law." *Garmon*, 359 U.S. at 242–43, 79 S.Ct. at 778 (*quoting Garner v. Teamsters Union*, 346 U.S. 485, 490–91, 74 S.Ct. 161, 165–66, 98 L.Ed. 228). At the outset, it is obvious that any determination by the Montana State Department of Labor and Industry as to whether or not plaintiff has or has not engaged in unfair labor practices under § 8 of the NLRA would greatly infringe upon this purpose. Should the state agency reach a finding contrary to the NLRB's decision on the same matter, the uniformity and consistency of substantive labor law would be jeopardized, creating the exact sort of disparity which Congress sought to prevent. In this respect, the statute is defective.

■ Further, the Court agrees with plaintiff that although the statute may have been designed to function solely as an eligibility standard by drawing a distinction between workers voluntarily unemployed and those unemployed involuntarily through no fault of their own, the *effect* of the statute is to regulate or prohibit plaintiff's conduct. A finding by the agency that plaintiff did engage in unfair labor practices would result in certain consequences, financial and otherwise, to plaintiff. Plaintiff's contribution obligation to the state unemployment fund would in-

crease, and subsequent activities would inevitably be colored by that finding. The Supreme Court has recognized that regulation of conduct "can be as effectively exerted through an award of damages as through some form of preventive relief", *Garmon*, 359 U.S. at 246–47, 79 S.Ct. at 780, and the Court believes that the same may be said in this case. The fact that any such regulation is indirect and consequential in nature, rather than intentional, does not lessen the regulatory effect.

In so deciding, the Court acknowledges the broad freedom generally accorded states to design and implement an unemployment compensation program reflecting their own policy choices. *See, New York Telephone Co. v. New York Department of Labor*, 440 U.S. 519, 537, 99 S.Ct. 1328, 1339, 59 L.Ed.2d 553 (1979). However, this freedom is not unlimited and must defer to the larger Congressional purpose behind the NLRA. The Court believes that the State of Montana exceeded its bounds by enacting legislation requiring state agency determination of a matter subject to the sole regulatory jurisdiction of the NLRB. *Cf., id.* As such, the statute must be declared unconstitutional.

■ This does not say that the commission of an unfair labor practice by an employer may not ever be used as a criteria for determining benefit eligibility. However, that determination must be made in the first instance by the NLRB, the federal agency entrusted by Congress with the sole jurisdiction to make such a finding.

## II. *Abstention*

■ Defendants ask the Court to abstain from ruling in this action under the principles of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). Under *Younger* and its progeny, federal-court interference with ongoing state judicial proceedings is discouraged, absent extraordinary circumstances, based on "notions of comity and respect for state functions." *Fresh International v. Agricultural Labor Relations Board*, 805 F.2d 1353 (9th Cir.1986). *Younger* principles apply to pending state administrative proceedings where important state interests are involved. *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 106 S.Ct. 2718, 2723 and n. 2, 91 L.Ed. 2d 512 (1986).

The Supreme Court has established a three-part test for determining whether abstention in favor of a state proceeding is appropriate in a given situation. Abstention is proper if:

(1) the state proceedings are ongoing;

(2) the proceedings implicate important state interests; and

(3) the state proceedings provide an adequate opportunity to raise federal questions.

*Fresh*, 805 F.2d at 1358 (*citing Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982). In this case, it is the second factor which is contested.

Defendants contend that the State of Montana has an important interest in enforcing its unemployment benefits law. Plaintiff, relying heavily on the Ninth Circuit's decision in *Champion International Corp. v. Brown*, 731 F.2d 1406 (9th Cir. 1984), counters that no important state interest is involved because the statute in question is preempted by the NLRA, and a state cannot have a substantial interest in enforcing an invalid law.

In *Champion*, the Circuit Court did hold that the State of Montana had no substantial interest in enforcing its age discrimination laws because they were preempted by ERISA. *Id.*, at 1408–09. However, in a later case, *Fresh International v. Agricultural Labor Relations Board*, 805 F.2d 1353 (9th Cir.1986), the court clarified its prior decision, stating:

[W]e did not say in *Champion* that abstention is never appropriate when a preemption claim is raised ... Rather, *Champion* was a case in which preemption was readily apparent.

*Id.*, at 1361. Thus, under *Fresh*, when an important state interest is involved, abstention is not required when preemption is readily apparent.

However, in the present case, as in *Fresh*, preemption is not readily apparent. Defendants make a persuasive argument that the statute in question does not purport to regulate or prohibit conduct or activities governed by preemptive federal law and is, therefore, not preempted. The attractiveness of this argument is illustrated by the fact that this Court, when initially confronted with the preemption issue, was inclined to agree with defendants. *See, Memorandum and Order* of December 8, 1987. The fact that further consideration has led the Court to alter its prior analysis does not make preemption "readily apparent." Based on this factor alone, abstention would appear to be proper.

■ The inquiry may not end at this point, however. In *Fresh*, the Court acknowledged that "a different result might obtain if the effect of preemption were to deprive a state agency or court of jurisdiction." *Fresh*, 805 F.2d at 1362, n. 13. In the present case, plaintiff essentially challenges the power of the state, through its administrative agency, to determine whether plaintiff has engaged in unfair labor practices as a criteria for awarding unemployment benefits. The Court has concluded, as a matter of federal law, that the state lacks that power since Congress has vested jurisdiction over such determinations exclusively with the NLRB, under 29 U.S.C. § 160. The effect of that conclusion is to deprive the state of jurisdiction over the matters which it seeks to decide. As such, principles of comity and federalism do not require the Court to allow the proceedings to continue.

Based on the foregoing,

IT IS ORDERED that plaintiff's Motion for Judgment on the Pleadings be, and hereby is, granted, and the Court does hereby declare that Mont.Code Ann. § 39–51–2305(3) is unconstitutional and void, as preempted by the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, to the extent that it requires determination by a state agency of matters within the exclusive jurisdiction of the National Labor Relations Board.

The Clerk of Court shall forthwith notify the parties of the making of this order.

## ON MOTION FOR RECONSIDERATION

Presently pending before the Court is the defendant-intervenors' Motion for Reconsideration of this Court's Memorandum Opinion and Order of September 30, 1988, granting plaintiff's Motion for Judgment on the Pleadings. For the reasons stated below, the Motion for Reconsideration is denied.

### FACTS AND PROCEDURAL BACKGROUND

By Memorandum and Order dated September 30, 1988, this Court held that Mont. Code Ann. § 39–51–2305(3) is unconstitutional and void, as preempted by the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, to the extent that it requires determination by a state agency of matters within the exclusive jurisdiction of the National Labor Relations Board. That holding was based upon this Court's determination that eligibility for state unemployment benefits may not properly be based upon a finding by a state agency that an employer has engaged in unfair labor practices, since jurisdiction to determine such issues rests solely in the National Labor Relations Board (NLRB), under the provisions of the National Labor Relations Act, 29 U.S.C. § 151 *et seq.* (NLRA).

The intervenors move for reconsideration of that Order, on the ground that the "unfair labor practice" standard of eligibility is a legitimate attempt by the Legislature to establish the voluntary or involuntary nature of unemployment. Given the intent of Congress to allow states broad freedom in setting up their unemployment compensation plans, and the important state interest in an unemployment scheme, preemption is not proper absent a compelling congressional intent to do so.

The intervenors also argue that, from a procedural standpoint, it is impractical to require the state to await a decision by the NLRB as to the commission of an unfair labor practice before determining eligibility for unemployment benefits, due to the protracted nature of NLRB proceedings.

Plaintiffs oppose the motion for reconsideration, arguing that the issues raised do

not constitute a proper basis for reconsideration, and that the procedural implications of the Court's prior decision do not provide sufficient basis for enforcing a statutory provision which is otherwise unconstitutional.

### DISCUSSION

A motion for reconsideration may be brought pursuant to Rule 59(e) or Rule 60(b), Fed.R.Civ.P.. *Lewis v. United States Postal Service,* 840 F.2d 712, 713 n. 1 (9th Cir.1988). Courts have delineated three major grounds justifying reconsideration:

(1) An intervening change in controlling law;

(2) The availability of new evidence;

(3) The need to correct clear error or prevent manifest injustice.

*All Hawaii Tours v. Polynesian Cultural Center,* 116 F.R.D. 645, 649 (D.Hawaii 1987).

A motion for reconsideration must demonstrate some reason why the Court should reconsider its prior decision, and must set forth facts or law of a strongly convincing nature to induce the Court to reverse its prior decision. *Id.* However, a motion for reconsideration that presents no arguments that have not already been raised in opposition to summary judgment should be denied. *Id.* (citing *Backlund v. Barnhart,* 778 F.2d 1386, 1388 (9th Cir.1985)).

The intervenors rely on the third ground for reconsideration, arguing that the decision should be vacated because of legal error. More specifically, the intervenors argue that (1) the procedural reality of awaiting a determination by the NLRB as to the existence of unfair labor practices before awarding unemployment benefits effectively destroys the state's ability to determine the voluntary or involuntary nature of the unemployment in question and to award benefits in a timely fashion; and (2) in enacting Title IX of the Social Security Act of 1935, Congress intended the states to have broad freedom in setting up the types of unemployment compensation programs they desired, and intended to tolerate some conflict between state and federal laws in this area. The intervenors contend that the Court failed to give proper consideration to those factors in arriving at its prior decision, and that the eligibility standard contained in M.C.A. § 39–51–2305(3) is consistent with both the voluntary/involuntary key to eligibility and the state's broad freedom to establish eligibility standards.

At the outset, the Court notes that the preemption arguments raised by the intervenors upon reconsideration were addressed extensively by the parties in prior briefs, and considered by the Court in arriving at its prior decision. To the extent that the intervenors reiterate arguments made in opposition to the motion for judgment on the pleadings, the motion for reconsideration has no valid legal basis. However, because the Court did not engage in extensive discussion of those issues in its prior order, it will now take this opportunity to expand upon its reasoning more fully.

It is true, as the intervenors assert, that the intent of the Congress in enacting the NLRA must be read, to some degree, in light of the intent behind the Social Security Act of 1935. *See New York Telephone Co. v. New York Labor Dept.,* 440 U.S. 519, 99 S.Ct. 1328, 59 L.Ed.2d 553 (1979); *Baker v. General Motors Corp.,* 478 U.S. 621, 106 S.Ct. 3129, 92 L.Ed.2d 504 (1986). Both were enacted in the same year, approximately 40 days apart, and have some bearing on the issues raised here. The U.S. Supreme Court, after careful review of both acts, has concluded that the states were intended to have "broad freedom to set up the types of unemployment compensation that they wish", *New York Telephone* 440 U.S. at 537, 99 S.Ct. at 1339, and that Congress intended to tolerate some conflict between state and federal law, in the area of unemployment compensation. *Baker,* 478 U.S. at 634, 106 S.Ct. at 3137. In this area concerning laws of general application and involving strong local interests, Congress cannot be said to have deprived the states of the power to act without "compelling congressional direction". *New York Telephone,* 440 U.S. at 540, 99 S.Ct. at 1341.

In *New York Telephone,* the United States Supreme Court upheld against a pre-

emption challenge a New York state statute authorizing payment of benefits to striking employees. In so deciding, the Court reasoned that "[t]he omission of any direction concerning payment to strikers in either the National Labor Relations Act or the Social Security Act implies that Congress intended that the states be free to authorize, or to prohibit, such payments, even though the relative strength of the parties to a bargaining dispute was affected thereby." *New York Telephone*, 440 U.S. at 544, 99 S.Ct. at 1343. Similarly, in *Baker*, the Supreme Court upheld a Michigan statute making an employee ineligible for unemployment compensation if he has "financed", by means other than paying union dues, a strike which caused his unemployment, affirming the states' power to make the policy choice between paying or denying unemployment benefits to striking workers. *Baker*, 478 U.S. at 634, 106 S.Ct. at 3137. These cases are illustrative of the notion that a state's power to make policy determinations in the field of unemployment compensation is not subject to preemption, absent compelling congressional direction.

However, the present case does not involve the states' power to make a broad policy choice about whether to pay benefits to strikers, or to implement the type of program it desires. It involves a challenge to a specific statutory subsection setting forth a standard for eligibility, chosen by the state to implement its policy decisions. The particular standard employed, depending as it does upon a finding of unfair labor practices by the employer, primarily involves labor-management relations and has a regulatory or prohibitory effect. It is therefore subject to a greater preemptive force than were the statutes considered in *Baker* and *New York Telephone*. This is true, notwithstanding the fact that the subsection also may happen to accomplish the desired goal of distinguishing voluntary from involuntary unemployment, for purposes of eligibility for benefits. Allowing a state agency to make a substantive determination regarding the commission of unfair labor practices by an employer, with financial and other ramifications flowing from that determination, is contrary to the clear congressional intent to avoid incompatible and conflicting adjudications in labor controversies and, in the Court's opinion, exceeds the degree of conflict between federal and state law which Congress intended to tolerate.

Procedural impracticability resulting from this conclusion does not warrant upholding a statute which is otherwise unconstitutional. The state, having made a policy determination to award unemployment benefits to striking workers in certain situations, must devise a standard for eligibility which does not intrude upon the exclusive jurisdiction of the NLRB to determine violations of labor laws.

Based on the foregoing,

IT IS ORDERED that defendant-intervenor's Motion for Reconsideration of this Court's Order of September 30, 1988 be and is hereby denied.

The Clerk is directed forthwith to notify counsel for the respective parties of the making of this order.