**Servillano Antonio JACOB, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. CIV. 99–752 ACK LEK.

United States District Court, D. Hawai'i.

June 2, 2000.

Servillano Antonio Jacob, Honolulu, HI, Pro se.

Mary Reiko Osaka, Special Assistant United States Attorney, Honolulu, HI, for United States of America, respondent.

*ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION, VACATING THE NOVEMBER 2, 1999 AND DECEMBER 30, 1999 ORDERS, AND DENYING PLAINTIFF'S APPEAL*

KAY, District Judge.

### BACKGROUND

On December 30, 1999, this Court filed an order holding Servillano Antonio Jacob's ("Plaintiff") appeal in abeyance and requiring the Government to seek to obtain authenticated records and submit any such records to the U.S. Department of the Army. On February 18, 2000, the Government filed a motion for reconsideration. Plaintiff did not file an opposition brief. The Government's motion is untimely under Local Rule 60.1(c). However, because the Court concludes that the Government has presented valid reasons for its delay, it will entertain the motion.

The original motion in this case came before the Court as an appeal from the Immigration and Naturalization Service's

("INS") denial of Plaintiff's naturalization application. Plaintiff is a 78–year old native and citizen of the Philippines who was paroled into the United States in April 1998 for the purpose of pursuing an application for naturalization.

On July 28, 1993, while in the Philippines, Plaintiff submitted his application for naturalization; he submitted an additional application for naturalization on December 22, 1998. Plaintiff bases his application for naturalization on his claim that he performed active duty military service during World War II on behalf of the United States in the Guerilla Unit of the Philippine Army, which was under the command of the United States Armed Forces. Plaintiff claims that he was inducted into the Guerilla Unit of the Philippine Army on September 24, 1944 at the Municipality of Urdaneta, Province of Pangasinan, Philippines, and was assigned Army serial number 410155. Plaintiff further claims that he was processed by the R.P.D. Team No. 27 at the Municipality of Naguillian, Province of La Union, Philippines on February 7, 1946, and that he was honorably discharged on February 20, 1946 pursuant to Special Order No. 42.

In 1990, the INS amended the Code of Federal Regulations to provide for "Natives of the Philippines with active duty service during World War II." 8 C.F.R. § 329.5. Section 329.5(a) provides:

A Person desiring to naturalize . . . shall establish that he/she: (1) Was born in the Philippines; (2) Served honorably at any time during the period beginning September 1, 1939, and ending December 31, 1946—(i) In an active-duty status under the command of the United States Armed Forces in the Far East, or (ii) Within the Commonwealth Army of the Philippines, the Philippine Scouts, or recognized guerrilla units; and (3) Resided in the Philippines prior to the service described in paragraph (a)(2) of this section.

*Id.* The regulations also provide that proof of military service "shall be provided solely by the duly authenticated records of the United States Army Reserve Personnel Records, St. Louis, Missouri, or the National Personnel Records Center, St. Louis, Missouri." *Id.* § 329.5(g).

On January 26, 1999, the District Director of the INS denied Plaintiff's application for lack of the required proof of qualifying active duty service. *See* Government's Response, July 13, 1999, at Exh. C. The INS based its denial of Plaintiff's application on the fact that the United States Army Personnel Records Center in St. Louis, Missouri could not verify his claimed military service. On February 3, 1999, Plaintiff filed a request for a hearing on the denial and submitted additional documentation. This additional evidence was forwarded to the appropriate records center for verification. Once again the Government was unable to find any record of his claimed military service, and the original decision denying naturalization was affirmed for lack of the required evidence on May 24, 1999.

On June 15, 1999, Plaintiff sought federal court review of the denial of his application. Plaintiff asserts that there was a typo in the discharge form that he signed on February 20, 1946. Plaintiff emphasizes that his name was mistyped on the discharge form—rather than listing "Servillano Antonio Jacob" (Plaintiff's name), the discharge form reversed his first and middle names to read "Antonio Servillano Jacob." Plaintiff states that he did not notice the mistake at the time because he did not look at the document carefully given that there were many soldiers who were being processed for discharge that day.

In support of his appeal, Plaintiff attached a joint affidavit from Tomas Blanco (serial number 410148) and Aquilino Jacob (serial number 410154), who were inducted into the Guerilla Unit of the Philippine Army and who aver that they served in the same unit with Plaintiff. Plaintiff also attached a February 7, 1946 Affidavit for

Philippine Army Personnel that reflects his military history, as well as the February 20, 1946 discharge form that lists the name "Antonio Servillano Jacob" but bears the signature of "Servillano A. Jacob." Moreover, Plaintiff has provided the Court with a copy of Special Order No. 42, which lists "Servillano Jacob, 410155, Inf., Urdaneta, Pang" among those soldiers to be discharged. Finally, Plaintiff also submitted an August 6, 1979 document from the Ministry of National Defense for the Republic of the Philippines certifying that he was entitled to certain educational benefits in recognition of his World War II military service.

The Government filed its Response to Request for Review of Denial of Naturalization Application on July 13, 1999. The Government argued that the INS did search for all possible permutations of Plaintiff's name, but nonetheless found no record of military service for Plaintiff. Thus, the Government argued that Plaintiff's application for naturalization must be denied as a matter of law because neither the United States Army Reserve Personnel Records center nor the National Personnel Records Center possess any records of Plaintiff's military service.

The Court held a hearing on the matter on November 1, 1999. Relying on the Ninth Circuit's decision in *Almero v. INS*, 18 F.3d 757, 758, 760 (9th Cir.1994), which held that Philippine veterans seeking naturalization could prove their military service through authentic Philippine documents (in addition to U.S. Army documents in St. Louis), the Court and the parties agreed that the Government would ask the United States consulate in Manila to authenticate Plaintiff's military records. On November 2, 1999, the Court issued an order holding Plaintiff's appeal in abeyance pending verification of his military records.

On November 12, 1999, the Government filed a supplemental response in which it

initially asserted that it still had not been properly served.[1] In addition, the Government argued that the 1994 *Almero* decision had been legislatively overruled by Congress. *See* Pub.L. 105–119, § 112. The Government contends that Congress specifically provided that eligibility is limited to those Philippine servicemen found on the U.S. Army lists or otherwise certified by the U.S. executive department exercising supervision over the applicable military component. *See* 8 U.S.C. § 1440 Note ("[T]he executive department under which a person served shall be—in the case of an applicant claiming to have served in the Philippine Army [or in a recognized guerilla unit], the United States Department of the Army."). Relying on this statutory authority, the Government ceased its efforts to verify Plaintiff's Philippine records, but renewed its query to the U.S. Army for a determination of service.

On December 17, 1999, the Government filed its second supplemental response in which it stated that further inquiry to the U.S. Army records centers in St. Louis had produced a negative response. On December 16, 1999, the INS District Director received a letter dated November 29, 1999 from the National Personnel Records Center in St. Louis stating:

> The records and all evidence presented have been reexamined and no basis has been found to warrant a change in the negative report furnished to the Immigration and Naturalization Service. Accordingly, no favorable action can be taken on your claim.

Government's Second Supplemental Response, Dec. 17, 1999, Exh. A. Thus, the Government contends that the administrative denial of Plaintiff's application for naturalization must be affirmed as a matter of law.

The Court rejected the Government's contention that the denial of Plaintiff's ap-

---

**1.** On November 22, 1999, the Court entered an Order directing the U.S. Marshals Service

to serve the Government on behalf of Plaintiff.

plication for naturalization must be affirmed as a matter of law because there are no duly authenticated records from either the United States Army Reserve Personnel Records, St. Louis, Missouri, or the National Personnel Records Center, St. Louis, Missouri, as required by 8 C.F.R. § 329.5(g). The Court held:

> The statute merely provides that such active duty military service must be proved by duly authenticated records held by the United States Department of the Army. Here, the Government did not carry out its agreement to have the United States consulate in Manila obtain authenticated records of Plaintiff's alleged military service. The Government contends that authentication of these records would be pointless because these records are not United States Army records. The Court disagrees. The Court orders the Government to fulfill its agreement and have the United States consulate in Manila obtain duly authenticated records of Plaintiff's military service, if any. The Court further orders the Government to provide any such records to the United States Department of the Army for its review to determine whether to supplement its existing World War II Philippine personnel service records with this information.

Order Holding Plaintiff's Appeal in Abeyance (filed Dec. 30, 1999).

The instant motion for reconsideration now raises the same legal issue. The Government reiterates its contention that Pub.L. 105–119 (which amended 8 U.S.C. § 1440 Note) "states that only those former guerillas listed on a United States Army final roster are eligible for naturalization." Mot. Recon. at 1. The Government argues that this "final list cannot be changed or supplemented." *Id.* at 7. Finally, the Government contends that the records from the Philippine Army which this Court ordered it to seek are irrelevant to a naturalization decision under 8 U.S.C. § 1440 Note, and therefore, this Court

should vacate its December 30, 1999 Order.

### STANDARD OF REVIEW

In the Ninth Circuit a successful motion for reconsideration must accomplish two goals. First, a motion for reconsideration must demonstrate some reason why the Court should reconsider its prior decision. Second, the motion must set forth facts or law of a "strongly convincing" nature to induce the court to reverse its prior decision. *Decker Coal Co. v. Hartman,* 706 F.Supp. 745, 750 (D.Mont. 1988) (citing *All Hawaii Tours v. Polynesian Cultural Center,* 116 F.R.D. 645, 649 (D.Haw.1987), *partially rev'd on other grounds,* 855 F.2d 860, 1988 WL 86203 (9th Cir.1988)). Courts have established three grounds justifying reconsideration: (i) an intervening change in controlling law, (ii) the availability of new evidence, and (iii) the need to correct clear error or prevent manifest injustice. *Decker Coal,* 706 F.Supp. at 750; *All Hawaii Tours,* 116 F.R.D. at 646; Local Rule 60.1.

Finally, a court must defer to an administrative agency's interpretation regarding an issue about which the statute is silent or ambiguous. *See Chevron U.S.A. v. Natural Resources Defense Council,* 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

### DISCUSSION

The instant motion for reconsideration argues that the Court should reconsider its prior decisions because Plaintiff is ineligible for naturalization as a matter of law pursuant to 8 U.S.C. § 1440 Note. The Government has not argued that there has been an intervening change in controlling law or availability of new evidence. The Court presumes that the Government bases its motion on the need to correct clear error.

The Court finds that the Government is correct and that the November 2, 1999 Order (whereby the Government agreed to

ask the U.S. Consulate in Manila to authenticate Plaintiff's miliary records and thereby supplement the U.S. Army lists) and the December 30, 1999 Order (ordering the Government to fulfill its agreement) should be vacated to correct clear error.

Plaintiff seeks naturalization under 8 U.S.C. § 1440 Note as a former member of a guerilla unit of the Philippine Army. Section 405 of the Immigration Act of 1990 modified § 1440 by adding a Note to the section entitled "Naturalization of Natives of the Philippines Through Certain Active Duty Service During World War II." *See* Pub.L. 101–649, § 405; 8 U.S.C. § 1440 Note.

In the original version of § 405, eligibility for naturalization was based, *inter alia,*[2] on a showing that the applicant "(B) *served honorably* ... (ii) within the Philippine Army, the Philippine Scouts, or recognized guerrilla units." Pub.L. 101–649, § 405(a)(1)(B)(ii) (emphasis added). As the Court explained above, the Ninth Circuit held in *Almero* that an applicant's service could be established through authentic Philippine documents in addition to U.S. Army documents in St. Louis. *See Almero,* 18 F.3d at 760–61 ("The INS contends that ... [the statute] plainly requires certification by a United States government department. But nothing in the language of either the [Immigration and Naturalization Act] or the [Immigration Act of 1990] expressly limits the certification of a veteran's eligibility to documentation by a United States department.")

Evidently, following *Almero,* the INS perceived a pattern of abuse and was able to convince Congress to narrow eligibility under § 405. Section 405 was amended in 1997 with the passage of Pub.L. 105–119. Subparagraph (a)(1)(B) was struck and re-

placed with language that limited eligibility for naturalization on the basis that Plaintiff is asserting (namely, having served on behalf of the United States in a guerilla unit of the Philippine Army) to applicants who,

> (ii) [are] *listed on the final roster* prepared by the Guerilla Affairs Division of the United States Army *of those who received recognition as having served honorably* in an active duty status within a recognized guerilla unit during the World War II occupation and liberation of the Philippines[.]

*See* Pub.L. 105–119, § 112(b)(1); Pub.L. 101–649, § 405(a)(1)(B)(ii), as amended by Pub.L. 105–119; 8 U.S.C. § 1440 Note (emphasis added). Under the amended language of § 1440 Note "the executive department under which a person served," for a person who was in a recognized guerilla unit (and therefore, the entity with authority to determine whether that person served honorably in active-duty status and was separated from service under honorable conditions) is the United States Department of the Army. *See* Pub.L. 105–119, § 112(b)(2); Pub.L. 101–649, § 405(a)(3)(A)(ii) & § 405(a)(3)(B), as amended by Pub.L. 105–119; 8 U.S.C. § 1440 Note; *compare Almero, supra* (allowing the executive department under which such a person served to be the Philippine Army). These changes were imposed retroactively to applications filed prior to February 3, 1995. *See* Pub.L. 105–119, § 112(d)(1); 8 U.S.C. § 1440 Note.[3] Looking at the evolution of the statute, the Court must conclude that the relevant analysis is whether an applicant who claims to have served in a guerilla unit is listed on the "final roster ... of those who received recognition as having served honorably," not whether an applicant can otherwise prove honorable service to the

---

**2.** Other requirements, not in issue here, included being born in the Philippines, residence in the Philippines prior to the military service, and filing one's application within certain deadlines. *See* Pub.L. 101–649, § 405(a).

**3.** *See also Cano v. Reno,* No. 98–55606, 2000 WL 140419, at *1 (9th Cir. Feb.7, 2000) (explaining that the 1997 Amendments contain an express retroactivity clause).

United States.[4] Furthermore, the only entity with authority to answer such questions is the United States Department of the Army.

A diligent search of the legislative history surrounding the passage of Pub.L. 105–119 did not show anything to the contrary. The only legislative history available discussing the amendment (as opposed to merely restating it) is Senator Inouye's speech presenting the amendment to the Senate. Senator Inouye explained that an amendment to § 405 was necessary because "the authority to naturalize applicants in the Philippines has now expired." 143 Cong. Rec. S379–01, *S497 (Jan. 21, 1997). He stated that his proposed legislation

> would immediately restore, for a 5–year period, the authority for the U.S. Embassy in Manila to complete the natural-

ization process of approximately 12,000 remaining applications which were properly filed under section 405 of the 1990 Act. The legislation does not extend the application period.[5]

*Id.* (footnote added). Senator Inouye explained, however, that the amendment to § 405 "makes clear that naturalization is available only to those applicants who were found by the Recovered Personnel Division of the U.S. Army and the Guerrilla Affairs Division of the U.S. Army to deserve benefits from the U.S. Government." *Id.* Thus, although the 1997 amendment extended the time frame for applications to be processed, it limited the ways in which an applicant could prove his eligibility for naturalization.[6]

The Court concludes that the only permissible inquiry is whether or not Plaintiff's name is listed on the "final roster." [7]

4. Regrettably, this may result in some Filipino veterans who honorably served our country being excluded from the intended benefits of the law because of deficiencies in record keeping. The Court notes that the Ninth Circuit was presented with evidence that many records of the United States Army were destroyed by a 1973 fire at the National Personnel Records Center ("NPRC") in St. Louis, although the Army claims most have been restored. *See Almero*, 18 F.3d at 759, 762 (refusing to resolve dispute of completeness of records).

5. The application period ended February 3, 1995. *See* 143 Cong. Rec. S379–01, *S497 (Jan. 21, 1997).

6. An interesting change in the 1997 amendment as it went through the legislative process illustrates Congress's intention to limit proof of wartime service to U.S. Army records, implicitly overruling *Almero*'s holding that such service could be proven through Philippine documents. *See Almero*, 18 F.3d at 762–63. The bill presented by Senator Inouye on January 21, 1997 would have allowed "the executive department under which a person served" (and therefore, under 8 U.S.C. § 1440(a), the department who determines if that person served honorably in an active-duty status) to be the General Headquarters of the Armed Forces of the Philippines "in the event the Department of the Army has no record of military service of such applicant." *See* 143 Cong. Rec. S379–01, *S497 (Jan. 21,

1997). The final version of the 1997 amendment, however, which appears in Pub.L. 105–119, § 112, omitted this clause, allowing only United States military departments to be "the executive department under which a person served." *See* Pub.L. 105–112, § 112(b); 8 U.S.C. § 1440 Note.

7. This conclusion is further supported by the recent unpublished case of *Cano v. Reno*, No. 98–55606, 2000 WL 140419 (9th Cir. Feb.7, 2000). *Cano* presents a similar situation to the instant case and is the only case the Court was able to find discussing the 1997 amendments to § 405. Cano had applied for naturalization in 1992 and the 1997 amendment was retroactively imposed. The court held:

> The Act makes it more difficult for Filipino veterans in Cano's position to establish their war-era service than it had been prior to the Act's passage. It amends Section 405 ... to waive the lawful permanent residency or territorial service requirements only for those veterans whose names appear on one of two lists and whose service is documented by U.S. officials. Cano's name does not appear on either approved list. In addition, he lacks a "duly authenticated certification" from the U.S. Army. Thus, Cano himself concedes that if the Act applies to him, it "ultimately prevent[s] [his] naturalization."

*Id.* at *1 (finding Filipino applicant who claimed service in a guerilla unit in World War II ineligible for naturalization under

The Court's orders of November 2, 1999 and December 30, 1999, directing the Government to obtain authenticated records from Manila of Plaintiff's miliary service, might very well provide the Government with evidence that Plaintiff fought for the United States in World War II. Under the current statute, however, such evidence would be irrelevant to the outcome of Plaintiff's naturalization application and this Court is powerless to do anything with such evidence. "[T]he power to make someone a citizen of the United States has not been conferred upon the federal courts ... as one of their generally applicable equitable powers. Rather, it has been given to them as a specific function to be performed in strict compliance with the terms of an authorizing statute ...." *INS v. Pangilinan*, 486 U.S. 875, 883–84, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988) (citations omitted).[8] Accordingly, the Government's Motion to Reconsider is GRANTED and the Court's Orders of November 2, 1999 and December 30, 1999 are VACATED. Furthermore, the Government maintains that a thorough search of all the relevant evidence (records produced and held by the United States Army) has not turned up evidence of Plaintiff's service. Because no other evidence could be relevant to the outcome of Plaintiff's naturalization application, his appeal of the denial of his naturalization application is DENIED.[9]

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Government's motion for re-

consideration, VACATES the November 2, 1999 and December 30, 1999 Orders, and DENIES Plaintiff's appeal.

IT IS SO ORDERED.

---

§ 1440 Note because his name did not appear on the "final roster") (footnotes omitted) (brackets in original). Thus, *Cano* holds that the final lists of the U.S. Army can no longer be supplemented by authentication of Philippine authorities as ruled in *Almero*.

8. The *Cano* court, when deciding whether or not to apply the 1997 amendments retroactively to Cano, cited this passage from *Pangilinan* after noting that courts occasionally refuse to apply a law retroactively because doing so would wreak a manifest injustice. *Cano*, 2000 WL 140419, at *1. However, the Court did not use the "manifest injustice"

rationale to refuse to apply the amendments to Cano because, "[i]n naturalization cases, courts simply do not have the discretion to weigh the equities in the manner urged by Cano." *Id.* at *2. Like the Ninth Circuit in *Cano*, this Court lacks discretion to weigh the equities of the instant situation.

9. The Court notes that if Congress should change the law in this area again, but in favor of applicants like Plaintiff, its holding today does not preclude Plaintiff's naturalization at that time. The Court holds only that Plaintiff has no right to naturalization under the statute now controlling its decision.