Earl F. ARAKAKI, et al., Plaintiffs,

v.

Benjamin J. CAYETANO in his official capacity as Governor of the State of Hawaii, et al., Defendants.

Civil No. 02–00139 SOM/KSC.

United States District Court,
D. Hawai'i.

June 18, 2002.

H. William Burgess, Patrick W. Hanifin, Im Hanifin Parsons, LLLC, Honolulu, HI, for Plaintiffs.

Charlene M. Aina, Gerard D. Lau, State of Hawaii, Attorney General, Honolulu, HI, for Benjamin J. Cayetano, State Officials, Hawaiian Homes Commissioners.

Thomas A. Helper, U.S. Attorney's Office, Honolulu, HI, for United States of America.

Sherry P. Broder, Davies Pacific Center, Honolulu, HI, for Trustees of the Office of Hawaiian Affairs.

Robert G. Klein, McCorriston Miller Mukai MacKinnon, Honolulu, HI, for Defendant–Intervenor SCHHA.

## ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION OF THE ORDER DISMISSING THEIR PUBLIC LAND TRUST CLAIMS

MOLLWAY, District Judge.

## I. *INTRODUCTION.*

On May 8, 2002, this court granted in part and denied in part a motion to dismiss ("Order"), 299 F.Supp.2d 1090, 2002 WL 32346742. The court found that Plaintiffs had taxpayer standing to assert equal protection challenges to the provision of benefits ("Benefits") by the Office of Hawaiian Affairs ("OHA"), the Department of Hawaiian Home Lands ("DHHL"), and the Hawaiian Homes Commission ("HHC") to Hawaiians and to native Hawaiians. However, the court found that Plaintiffs lacked standing to assert claims for breach of the public land trust created by section 5(f) of the Admissions Act.

To the extent the court dismissed their public land trust claims for lack of standing, Plaintiffs now move for reconsideration of the order. Plaintiffs fail to justify reconsideration of the order dismissing their public land trust claims. Their motion for reconsideration is denied.

## II. *RECONSIDERATION STANDARD.*

Courts have established three grounds justifying reconsideration of an order: (i) an intervening change in controlling law, (ii) the availability of new evidence, and (iii) the need to correct clear error or prevent manifest injustice. *Decker Coal Co. v. Hartman,* 706 F.Supp. 745, 750 (D.Mont.1988); *All Hawaii Tours v. Polynesian Cultural Ctr.,* 116 F.R.D. 645, 649 (D.Haw.1987), *rev'd in part on other grounds,* 855 F.2d 860, 1988 WL 86203 (9th Cir.1988). These grounds are set forth in Local Rule 60.1, which allows reconsideration of interlocutory orders upon the following grounds: (a) discovery of new material facts not previously available; (b) intervening change in the law; or (c) manifest error of law or fact.

## III. *ANALYSIS.*

Plaintiffs argue that this court erred in finding that they lack standing to assert claims as beneficiaries of the public land trust created by section 5(f) of the Admissions Act.[1] Plaintiffs' arguments are unpersuasive.

---

1. Plaintiffs say that there is and has been only one true public land trust—the one created in 1898. *See* Motion for Reconsideration (May 22, 2002) at 13–14. However, Plaintiffs are only challenging the trust as it exists through its present trust instrument, section 5(f) of the

A. *Plaintiffs Did Not Timely Argue that They Are Proceeding on a Theory of Direct Injury. Even if Their Arguments Were Timely, They Are Insufficient For Standing Purposes.*

Until recently, Plaintiffs had not asserted that they were victims of actual discrimination. *See* Order at 1095 n. 4, 1104–05. They did not, for example, assert that they had applied for Benefits and were turned down solely because of their race. Instead, Plaintiffs previously argued that injuries were based solely on the expenditure of their state taxes on allegedly racially discriminatory programs and the state's alleged breaches of a public land trust created to benefit them as well as others. On this motion for reconsideration, however, Plaintiffs assert what they say are "direct injuries" for purposes of the standing analysis. *See* Motion at 5. This argument is untimely and unpersuasive.

Plaintiffs raised the issue of direct injury through several supplemental declarations filed after the briefing period for the motion to dismiss closed. Plaintiffs claim that Rule 6 of the Federal Rules of Civil Procedure allows them to file such declarations. Even assuming that Rule 6 allows the filing of supplemental declarations after the briefing period has closed but before the hearing on a motion, those declarations clearly violated Local Rule 7.6. Local Rule 7.6 requires declarations and affidavits to contain only facts, not conclu-

sions and argument. This court may disregard any declaration or affidavit not in compliance with Local Rule 7.6. The supplemental declarations of Patricia Carroll and Roger Grantham did not contain only facts, but instead were filled with speculative conclusory statements and argument.

■ For example, Carroll and Grantham postulated that, if the State did not fund the Benefits, Carroll could have a better graduate education and Grantham's daughter could have air conditioning in her classroom. But Carroll and Grantham never established that, but for the funding of the Benefits, money would actually be spent on the programs they identified. Even assuming that the money spent on the Benefits would be used for public education if it were not spent on the Benefits, there is no way of determining how that money would be used to further public education. That money might, for example, be used to enhance the state's special education or extracurricular programs. It is pure speculation and argument for Carroll and Grantham to conclude that they have suffered an injury because money now spent on the Benefits might be allocated in a manner that enhances Carroll's graduate education and adds air conditioning to Grantham's daughter's classroom. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (to have standing to maintain a claim, a plaintiff must demonstrate: 1) an injury in fact—an invasion of

Admissions Act. *See* Transcript of Proceedings on Motion to Dismiss (filed May 10, 2002) at 38–40. Plaintiffs are not asserting claims that prior versions of the public land trust were breached, as those prior versions of the public land trust were either modified and/or amended by the Hawaiian Homes Commission Act and/or Admissions Act. Moreover, it is possible that Plaintiffs are not beneficiaries under those prior versions. Accordingly, even though Plaintiffs argued at the hearing

on their Motion for Temporary Restraining Order that the 1898 public land trust was breached when the Hawaiian Homes Commission Act and the Admissions Act were enacted, *see* Transcript of Proceedings on Motion for Temporary Restraining Order (filed March 13, 2002) at 19–20, Plaintiffs have abandoned that argument and are clearly proceeding only on the argument that section 5(f) of the Admissions Act is being breached.

a legally protected interest that is concrete and particularized, as well as actual or imminent, not conjectural or hypothetical; 2) a causal relationship between the injury and the challenged conduct—an injury that is fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and 3) a likelihood, not mere speculation, that the injury will be redressed by a favorable decision); *San Diego County Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1126 (9th Cir.1996). Accordingly, even though Plaintiffs say that they have suffered "direct injuries," those injuries are clearly insufficient to meet the requirements for standing.[2]

B. *Plaintiffs Do Not Establish Their Entitlement to Proceed Based on Trust Beneficiary Standing.*

Citing *Com. of Pennsylvania v. Board of Dirs. of City Trusts of Philadelphia*, 353 U.S. 230, 77 S.Ct. 806, 1 L.Ed.2d 792 (1957), Plaintiffs contend that they have trust beneficiary standing to assert a claim challenging the restriction of Benefits to Hawaiians and native Hawaiians as being racially discriminatory and therefore ille-

gal. *Pennsylvania* held that the government, while acting as trustee of a public land trust, cannot enforce privately created racial classifications. *Id.* at 231, 77 S.Ct. 806. *Pennsylvania*, however, does not establish that Plaintiffs are entitled to trust beneficiary standing, as *Pennsylvania* involved a challenge by persons who claimed to have been victims of actual discrimination, not trust beneficiaries claiming that a trust term was illegal. *Id.* In *Pennsylvania*, the plaintiffs had actually applied for admission to the school that received the trust's funds for the benefit of "poor white male orphans." *Id.* The two plaintiffs were not admitted to the school based on their race, as they were not "white." They were victims of actual discrimination for standing purposes. *Id.* As there is no question that Plaintiffs here have not suffered any actual discrimination, *Pennsylvania* is inapplicable and Plaintiffs' citation to *Pennsylvania* does not establish a manifest error of law or fact by this court.[3]

Plaintiffs cite sections 166 and 214 of the Restatement of Trusts 2d for the propositions that a trustee has a duty not to

---

**2.** Plaintiffs' citation to *Price v. Akaka*, 928 F.2d 824 (9th Cir.1990) (*"Price III"*), *cert. denied*, 502 U.S. 967, 112 S.Ct. 436, 116 L.Ed.2d 455 (1991), is unpersuasive. In the context of a claim challenging the public land trust trustees' failure to spend any money for the betterment of the conditions of native Hawaiians, *Price III* stated that the native Hawaiian plaintiffs had standing to assert that the trustees should be spending some money to benefit native Hawaiians, even though the trust instrument allowed the trustees to spend the trust assets on other things. *See id.* at 826. In the present case, however, Plaintiffs' alleged "direct injuries" are not based on the trustees' expenditure of funds, but instead on the state legislature's expenditure of funds.

**3.** For the first time in their reply in support of their motion for reconsideration, Plaintiffs assert that, as beneficiaries of the public land

trust, "they did 'apply' to the trustee, the State, for their equal share of the benefits." Thus, Plaintiffs argue, *Pennsylvania* is applicable to the present case. Reply at 9. Not only is this new argument untimely, as it is raised for the first time in their reply and could have easily been asserted in the underlying motion itself, *see infra* at 1113, it also stretches the facts. The alleged "applications" are evidenced by letters from H. William Burgess. Although he is counsel of record for Plaintiffs, he appears to have written those letters on his own behalf, not on Plaintiffs' behalf. The letters make no mention of clients. *See* Exs. I to Q of Plaintiffs' Opposition to the Motion to Dismiss. Plaintiffs therefore cannot rely on these letters as their "applications" for Benefits. If Plaintiffs continue to rely on these letters, the letters may be the subject of discovery and may make Mr. Burgess a witness in this case.

comply with an illegal trust term, and that a trust beneficiary may sue to enforce the duties of the trustee "to him." These provisions do not purport to speak to the issue of federal court standing. Indeed, by referring to a trustee's breach of a duty "to him," the provisions appear to be referring more to direct injuries than to general challenges as to legality brought by members of the public. *See* Restatement (Second) of Trusts § 214, cmt. b (1959) ("A particular beneficiary cannot maintain a suit for a breach of trust which does not involve any violation of duty to him").

The Ninth Circuit has not broadly approved of trust beneficiary standing for members of the public to assert claims that the section 5(f) trust is being breached. At most, the Ninth Circuit has permitted native Hawaiians to attempt to compel Hawaii to abide by the terms of the section 5(f) trust. *See Price III*, 928 F.2d 824. In allowing native Hawaiians to assert claims that Hawaii was breaching the public land trust by comingling funds, expending none of those funds on native Hawaiians, and using the funds for purposes other than those listed in section 5(f), the Ninth Circuit cited section 391 of the Restatement of Trusts 2d. The Ninth Circuit was citing that provision for the proposition that the native Hawaiian claims were consistent with the common law of trusts that allows beneficiaries to assert breaches of trusts even though the trustee may, consistent with the trust instrument, use the trust solely to benefit others. *Id.* at 827. Section 391 states that, absent a "special interest" in the enforcement of a charitable trust, a member of the public may not maintain an action for the enforcement of that trust. Restatement (Second) of Trusts § 391 (1959).[4] Al-

though *Price III* did not deem the section 5(f) trust to be a charitable trust for which section 391 is applicable, the Ninth Circuit's citation of section 391 implies that some type of "special interest" is needed for a member of the public to bring a suit for breach of the public land trust created by section 5(f) of the Admissions Act.

 In *Price III*, the native Hawaiian plaintiffs had such a "special interest" in seeing that they received benefits from the public land trust that was set up, at least in part, for their express benefit. Although the section 5(f) trust arguably benefits every member of the public in Hawaii, it is this notion that something more than membership in the public is needed to maintain such a claim that lies at the heart of this court's determination that Plaintiffs lack standing to assert their public land trust claims. Because Plaintiffs assert standing based only on being part of the public generally, and because Plaintiffs have cited no authority indicating that they have federal court standing in that capacity to allege a breach of the public land trust, Plaintiffs have not demonstrated that this court erred in dismissing their claims for breach of the public land trust based on a lack of standing.

C. *Plaintiffs Have Not Demonstrated That They Have Prudential Standing.*

Plaintiffs have not demonstrated any manifest error of law or fact because they have not shown prudential standing to assert their breach of the public land trust claims. *See* Order at 1104–05. In their Motion for Reconsideration, Plaintiffs cite *Napeahi v. Paty,* 921 F.2d 897 (1990), *cert. denied,* 502 U.S. 901, 112 S.Ct. 278, 116 L.Ed.2d 230 (1991), and *Ulaleo v. Paty,*

---

**4.** Comment d of section 391 clarifies that the "mere fact that ... members of the public ... benefit from the enforcement of the trust is not a sufficient ground to entitle them to sue." *Id.,* cmt. d.

902 F.2d 1395, 1397 (1990) ("*Ulaleo II* "), for the proposition that all members of the public of Hawaii have prudential standing to assert claims that the public land trust is being breached by provision of Benefits to only Hawaiians and native Hawaiians.[5] Neither case is persuasive. Like the various *Price* decisions discussed in the Order, *Napeahi* and *Ulaleo II* found standing for native Hawaiians and a native Hawaiian group to assert an actual breach of the public land trust. The cases did not hold that the public in general has standing to contest the terms of the trust. In all of the cases, native Hawaiians or native Hawaiian groups had standing to assert claims based on the beneficiary status granted to them by the trust's express purpose of being for the betterment of the conditions of native Hawaiians. None of these cases involved the public of the State of Hawaii or the issue of whether the public has prudential standing to assert claims that the public land trust is being breached.

*Napeahi* certainly does not support Plaintiffs' claims that the prudential limitations on standing are satisfied in this case. In *Napeahi,* Napeahi claimed that Hawaii breached the public land trust when it allowed some alleged trust land to be abandoned to a private developer. *Id.* at 899. The Ninth Circuit determined that, as a native Hawaiian, Napeahi had trust beneficiary standing to assert a breach of the public land trust's provision that the land be used, at least in part, "for the betterment of the conditions of native Hawaiians." *Id.* at 901 n. 2. In noting that Napeahi had standing, the Ninth Circuit cited *Price v. Akaka,* 915 F.2d 469 (9th Cir.1990), which was amended and super-

seded by *Price III,* 928 F.2d 824. Like *Napeahi, Price III* involved native Hawaiian plaintiffs who had standing to assert claims that the public land trust was being breached. Neither *Napeahi* nor *Price III* examined prudential standing for the public of Hawaii to assert claims alleging a breach of the public land trust.

*Ulaleo II* is similarly distinguishable. In *Ulaleo II,* the Ninth Circuit, citing *Price v. Hawaii,* 764 F.2d 623, 628 (9th Cir.1985) ("*Price I* "), *cert. denied,* 474 U.S. 1055, 106 S.Ct. 793, 88 L.Ed.2d 771 (1986), found that an individual native Hawaiian plaintiff and the Pele Defense Fund ("PDF") had standing to assert breaches of the public land trust. *Ulaleo II,* 902 F.2d at 1397. Because the Ninth Circuit did not examine the "ancestry of the organization's members" in *Ulaleo II, see* Motion at 12, Plaintiffs argue that race is unimportant in determining whether parties have standing to assert breaches of a public land trust. However, PDF's members must have included native Hawaiians, as PDF was asserting claims on behalf of native Hawaiians. *See Ecological Rights Foundation v. Pacific Lumber Co.,* 230 F.3d 1141, 1147 (9th Cir.2000) ("An organization has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purposes; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit") (quotations omitted). In the District Court opinion in *Ulaleo,* Judge Alan C. Kay noted that the plaintiffs were alleging that the land exchange between Hawaii and Campbell Estate violated sec-

---

**5.** Borrowing a term from an earlier version of the public land trust, Plaintiffs argued in the underlying motion that all "inhabitants" of Hawaii have prudential standing. However, the current version of the section 5(f) public land trust does not refer to "inhabitants," but instead to the public.

tion 5(f) of the Admissions Act because Hawaii did not make a record of the impact that exchange would have on the rights of native Hawaiians. *See Ulaleo v. Paty,* Civil No. 88–320 ACK, slip op. at 3–4 (D.Haw. July 26, 1989) ("*Ulaleo I* ").

PDF (in *Ulaleo I* and *Ulaleo II* ) and the Hou Hawaiians (in *Price I* ) were claiming that Hawaii was breaching its duty under the public land trust to better the conditions of native Hawaiians. The recognition of standing for PDF and the Hou Hawaiians does not require that Plaintiffs be found to have standing here. Plaintiffs claim standing only as members of the public of the state of Hawaii, a status that all but destroys any standing requirement.

■ Plaintiffs cite no authority indicating that the public in general has standing to assert claims for breaches of a public land trust. Authorities indicating that native Hawaiians and native Hawaiian groups may assert such claims do not go as far as Plaintiffs would have this court go. Plaintiffs demonstrate no manifest error of law or fact that would justify reconsideration of this court's determination that Plaintiffs lack prudential standing to assert their breach of public land trust claims as members of the public of Hawaii.

In their reply, Plaintiffs argue that their claims are not precluded because the members of the public of Hawaii are indeed subject to limitation. As the public land trust was created "for the betterment of the conditions of native Hawaiians," *see* P.L. 86–3 (March 18, 1959), § 5(f), *reprinted in* 73 Stat. 4, 6, Plaintiffs argue that the term "public" excludes native Hawaiians, as they receive Benefits and cannot challenge that receipt. This court recognized

this limitation in the Order, but noted that the public was still too broad to merit prudential standing. *See* Order at 1104 n. 17.

■ Plaintiffs also argue that an additional 240,000 people, the alleged number of Hawaiians eligible to receive Benefits from OHA, are excluded from the public with standing. Plaintiffs say that, "[a]ccording to the 2,000 Census, there are about 240,000 residents of Hawaii who consider themselves at least part Hawaiian." Reply in Support of Motion for Reconsideration at 3. As this argument was raised for the first time in their reply, this court disregards it pursuant to Local Rule 7.4 ("Any arguments raised for the fist time in the reply shall be disregarded").[6] Moreover, Plaintiffs' citation to the 2000 Census cannot be considered newly discovered evidence that could justify a motion for reconsideration. To support such a motion, Plaintiffs would have to show not only that the evidence was newly discovered or unknown to them until after the hearing on the underlying motion, but also that they could not with reasonable diligence have discovered and produced such evidence at the hearing. *See Engelhard Indus., Inc. v. Research Instr. Corp.,* 324 F.2d 347, 352 (9th Cir.1963), *cert. denied,* 377 U.S. 923, 84 S.Ct. 1220, 12 L.Ed.2d 215 (1964). Plaintiffs have made no such showing.

In any event, even assuming that the members of the public of Hawaii do not include 240,000 people in Hawaii, the members of the public remain so numerous that Plaintiffs can fairly be said to be asserting a generalized grievance. They therefore fail to demonstrate that they have prudential standing.[7] *See United States v. Hays,*

---

6. Even assuming that the number of Hawaiians in Hawaii was stated somewhere in the papers on the underlying motions, this court

had no independent duty to search the voluminous record for such a number.

7. Although *Hoohuli v. Ariyoshi,* 741 F.2d 1169 (9th Cir.1984), allowed state taxpayers

515 U.S. 737, 743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995).

Because Plaintiffs have failed to demonstrate that this court erred in determining that they lacked prudential standing, they have failed to demonstrate that the order dismissing their public land trust claims should be reconsidered.[8]

## IV. CONCLUSION.

Because Plaintiffs have failed to demonstrate any reason justifying reconsideration of the Order, their motion for reconsideration is denied.

IT IS SO ORDERED.

---

to assert claims, indicating that prudential standing limitations do not bar claims shared with members of the state taxpayer base, Plaintiffs cite no authority indicating that the number of people who pay taxes (a number that would exclude children, low income families, delinquent taxpayers, and retirees) to Hawaii is greater than the number of members of the public (even assuming that the "public" does not include the 240,000 Hawaiians). The term "public" is so broad that it could include hundreds of thousands of transient visitors every year or anyone else who uses public improvements or public lands. *See* Admission Act, ¶ 5(f). Given the broad and indefinite character of the "public," it is highly doubtful that Plaintiffs could have made such a showing even had they timely submitted statistical evidence. Accordingly, Plaintiffs have not shown that *Hoohuli* compels a finding of prudential standing for Plaintiffs.

8. As Plaintiffs lack prudential standing to assert claims for breach of the public land trust, Plaintiffs can show no manifest error of law or fact arising from their other arguments for public trust beneficiary standing. Accordingly, even assuming that Plaintiffs can properly allege that the state breached its duty to Plaintiffs to not enforce an illegal trust term, they lack standing to assert such a claim in this court based solely on the fact that they are beneficiaries of the trust as members of the public of Hawaii. Similarly, even assuming that beneficiaries of a city public trust may assert breaches of that trust under *Kapiolani Park Preservation Soc. v. City & County of Honolulu,* 69 Haw. 569, 572–73, 751 P.2d 1022, 1025 (1988), when the government refuses to seek instructions as to the lawfulness of an action relating to the trust, Plaintiffs still lack prudential standing under federal law to assert, as members of the public of Hawaii, that the public land trust created by section 5(f) is being breached.